# No. 26-1843

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

**TERRY W. KWONG,**

**Plaintiff-Appellee**

**v.**

**UNITED STATES,**

**Defendant-Appellant**

**ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES COURT OF FEDERAL CLAIMS
NO. 1:23-CV-00267; JUDGE MOLLY R. SILFEN**

## OPENING BRIEF FOR THE UNITED STATES

**BRETT A. SHUMATE**
***Assistant Attorney General***
**JOSHUA WU**
***Deputy Assistant Attorney General***

**FRANCESCA UGOLINI** **(202) 514-3361**
**CLINT A. CARPENTER** **(202) 514-4346**
**SAMUEL P. JONES** **(202) 616-9085**
***Attorneys, Tax Litigation Branch***
***Civil Division, U.S. Department of Justice***
***Post Office Box 502, Washington, D.C. 20044***

**September 16, 2026**

# TABLE OF CONTENTS

Page

Table of contents ... i
Table of authorities ... iv
Statement of related cases ... xiii
Glossary ... xiv
Jurisdictional statement ... xv
Statement of the issue ... 1
Statement of the case ... 1

A. Legal background ... 3

1. Presidential declarations of disasters generally ... 3

2. Section 7508A(a)'s discretionary postponement period for tax-related deadlines ... 7

3. Section 7508A(d)'s mandatory postponement period for tax-related deadlines ... 10

B. Factual and procedural background ... 13

1. The IRS's discretionary postponement of tax deadlines under §7508A(a) due to COVID-19 ... 13

2. The President's major disaster declarations for COVID-19 ... 14

2. Kwong's administrative refund claims ... 16

3. Proceedings in the Claims Court ... 16

Summary of argument ... 20
Argument:

The Claims Court incorrectly interpreted §7508A(d)'s "60-day extension" as having lasted over three-and-a-half years ... 25

Standard of review ... 25

A. Section 7508A(d)'s text compels the conclusion that the postponement period ended 60 days after January 20, 2020, the only "incident date specified" in the President's disaster "declaration" ....... 25

1. The words "and continuing" are not a "date," much less a "specified" incident date ....... 28

2. The incident date must be specified in the President's disaster "declaration," not by FEMA ....... 30

3. The President's disaster declaration specified only one incident date: January 20, 2020 ....... 32

a. January 20, 2020, is both the "earliest" and "latest" incident date under §7508A(d) ....... 34

b. Past Presidential disaster declarations routinely listed only one incident date ....... 35

B. The Claims Court's conclusion that the postponement period lasted over three-and-a-half years contravenes the statute's plain text and important context ....... 38

1. The Claims Court incorrectly substituted FEMA's "incident period" for §7508A(d)'s "incident date" ....... 39

a. Congress intentionally chose *not* to tie the postponement period to the FEMA-determined "incident period" ....... 39

b. The "incident period" was neither set by the President, nor stated in his declaration ....... 43

2. The Claims Court incorrectly elevated the declaration's text over §7508A(d)'s text ....... 48

3. The Claims Court read too much into Congress's later amendment of §7508A(d) ....... 51

C. Other structural and contextual clues support the time-limited postponement period that is evident from §7508A(d)'s text ........ 54

1. Section 7508A created a discretionary *and* a mandatory postponement period, but the Claims Court's interpretation of the latter makes this distinction meaningless ........ 55

2. Section 7508A(d)'s heading is more evidence that the mandatory postponement period is 60 days ........ 61

3. A 60-day postponement period tracks Congress's concern about "certainty" ........ 62

4. The Claims Court's over three-and-a-half-year postponement period produces absurd results for tax administration ........ 63

D. Alternatively, the "latest incident date so specified" was the date of the President's disaster declaration ........ 69

E. At all events, the mandatory postponement period cannot exceed one year ........ 72

Conclusion ........ 74
Statutory addendum ........ 76
Record addendum ........ 79

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abdo v. Commissioner*,
162 T.C. 148 (2024)........................................... 9-12, 54, 57-58, 73
*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) ...........................................................34
*Bates v. United States*,
522 U.S. 23 (1997) ...........................................................52
*Bayer AG v. Housey Pharms., Inc.*
340 F.3d 1367 (Fed. Cir. 2003)...........................................28
*Blue Sky the Color of Imagination, LLC v. United States*,
160 F.4th 1334 (Fed. Cir. 2025) ........................................25
*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .........................................................62
*Burnet v. Willingham Loan & Tr. Co.*,
282 U.S. 437 (1931) .........................................................29
*Campos-Chaves v. Garland*,
602 U.S. 447 (2024) .........................................................25
*City of Chicago, Illinois v. Fulton*,
592 U.S. 154 (2021) .........................................................60
*Commissioner v. Est. of Sternberger*,
348 U.S. 187 (1955) .........................................................52
*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .........................................................40
*Culbertson v. Berryhill*,
586 U.S. 53 (2019) ...........................................................25
*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017) .........................................................67
*FCC v. AT&T Inc.*,
562 U.S. 397 (2011) .........................................................34
*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982) .........................................................63
*Mississippi ex rel. Hood v. AU Optronics Corp.*,
571 U.S. 161 (2014) .........................................................40
*Jackson v. United States*,
100 Fed. Cl. 34 (2011)........................................................33

**Cases (cont'd):** **Page(s)**

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016) .................................................................56
*Kwong v. United States*,
179 Fed. Cl. 382 (2025)..................................................................3
*Monsalvo v. Bondi*,
604 U.S. 712 (2025) .................................................................37
*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .................................................................72
*New York and Presbyterian Hosp. v. United States*,
881 F.3d 877 (Fed. Cir. 2018).....................................................62
*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) .................................................................48
*Patel v. Garland*,
596 U.S. 328 (2022) .................................................................43
*Polselli v. IRS*,
598 U.S. 432 (2023) .................................................................60
*RHI Holdings, Inc. v. United States*,
142 F.3d 1459 (Fed. Cir. 1998).....................................................2
*Rudisill v. McDonough*,
601 U.S. 294 (2024) .................................................................61
*Russello v. United States*,
464 U.S. 16 (1983) ...................................................................42
*S. Dakota v. Yankton Sioux Tribe*,
522 U.S. 329 (1998) .................................................................52
*Salinas v. United States R.R. Ret. Bd.*,
592 U.S. 188 (2021) .................................................................42
*Sturgeon v. Frost*,
577 U.S. 424 (2016) .................................................................54
*Tanzin v. Tanvir*,
592 U.S. 43 (2020) ...................................................................28
*Territory of Guam v. United States*,
593 U.S. 310 (2021) .................................................................55
*United States v. Wilson*,
290 F.3d 347 (D.C. Cir. 2002).....................................................37
*West Virginia v. EPA*,
597 U.S. 697 (2022) .................................................................68

**Cases (cont'd):** **Page(s)**

*WestRock Va. Corp. v. United States*,
941 F.3d 1315 (2019) .......................................................................63

**Statutes:**

28 U.S.C.:
§1295(a)(3) .......................................................................xv
§1346(a)(1) .......................................................................xv
§2107(b)(1) .......................................................................xv

42 U.S.C.:
§5122(1) .......................................................................4
§5122(2) .......................................................................4
§5122(4) .......................................................................5
§5164 .......................................................................4
§§5170-5189h .......................................................................4
§5170(a)-(b) .......................................................................4, 5, 32
§§5191-5193 .......................................................................4
§5191(a)-(c) .......................................................................4, 32
§5201(a)(1) .......................................................................4

Act of Jan. 2, 1951, Pub. L. No. 81-908, 64 Stat. 1136 ......................42

Federal Disaster Relief Act of 1950, Pub. L. No. 81-875,
64 Stat. 1109 .......................................................................5, 6

Filing Relief for Natural Disasters Act, Pub. L. No. 119-
29, 139 Stat. 471 (2025) .......................................................................13

Further Consolidated Appropriations Act, 2020, Pub. L.
No. 116-94, 133 Stat. 2534 (2019) ...............................................10

Infrastructure Investment and Jobs Act, Pub. L. No.
117-58, 135 Stat. 429 (2021) ...............................................12

**Statutes (cont'd):** **Page(s)**

Internal Revenue Code (26 U.S.C.):
§165(i)(5) ........................................ 11, 31
§165(i)(5)(A) ........................................ 8, 31
§165(i)(5)(B) ........................................ 31
§1033(h)(3) (Supp. II 2002) ........................................ 8
§3804 (1946 & Supp. V. 1952) ........................................ 42
§6532(a)(1) ........................................ xv, 2, 16, 17, 33
§7422(a) ........................................ xv, 16
§7508(a) ........................................ 8, 42
§7508(a)(1) ........................................ 12, 42, 54, 57, 64
§7508(a)(1)(A)-(C) ........................................ 9, 65
§7508(a)(1)(D) ........................................ 9, 65
§7508(a)(1)(E)-(F) ........................................ 9, 65
§7508(a)(1)(F) ........................................ 12
§7508(a)(1)(G)-(J) ........................................ 9, 65
§7508(a)(1)(K) ........................................ 9, 65
§7508A(a) ........................................ 7-9, 12, 14, 33, 53, 55-56, 60, 64, 68, 72-73
§7508A(a)(1) ........................................ 57
§7508A(d) (Supp. II 2020)
.... 1, 7, 18, 20, 22, 29, 38-39, 42-44, 46, 55-56, 61, 64, 69-70, 73-74
§7508A(d)(1) (Supp. II 2020) ........................................ 1, 11, 26, 55, 57
§7508A(d)(1) (Supp. III 2021) ........................................ 51, 54
§7508A(d)(1)-(2) (Supp. II 2020) ........................................ 57
§7508A(d)(1)(A) (Supp. II 2020) ........................................ 30
§7508A(d)(1)(B) (Supp. II 2020) ........................................ 30
§7508A(d)(2) (Supp. II 2020) ........................................ 11
§7508A(d)(3) (Supp. II 2020) ........................................ 11, 31
§7508A(d)(5) (Supp. II 2020) ........................................ 55
§7508A(e) ........................................ 12

Robert T. Stafford Disaster Relief and Emergency
Assistance Act, Pub. L. No. 93-288, 88 Stat. 143
(1974) ........................................ 3

**Statutes (cont'd): Page(s)**

Taxpayer Certainty and Disaster Relief Act of 2019, Pub. L. No. 116-94, div. Q, 133 Stat. 2534, 3236-47:
§205 .......... 10
§201(1), (3) .......... 41
§201(1)(A) .......... 41
§201(4) .......... 41
§202(a)(4)(A) .......... 41
§202(b)(2)-(3) .......... 41
§202(c)(2)-(3) .......... 41
§203(b)(1) .......... 41
§203(b)(3)(B) .......... 41
§204(b)(3) .......... 41
§204(c)(2)-(3) .......... 41
§207(c)(1) .......... 41

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 .......... 7

Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, 115 Stat. 2427 (2002) .......... 7

**Regulations and Regulatory Materials:**

44 C.F.R.:
§206.32(e) .......... 6, 29
§206.32(f) .......... 6-7, 40, 43, 50
§206.36 .......... 5
§206.40(a)-(b) .......... 45
§206.40(c) .......... 46
§206.44(a) .......... 6, 44
§206.44(b) .......... 6, 43
§206.44(c) .......... 50

*California; Amend. No. 2 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 20184 (Apr. 16, 2021) .......... 46

**Regulations and Regulatory Materials (cont'd): Page(s)**

*California; Amend. No. 3 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 23413 (May 3, 2021) ............................47

*California; Amend. No. 5 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 53091 (Sep. 24, 2021)...........................47

*California; Major Disaster and Related Determinations*, 85 Fed. Reg. 20703 (Apr. 14, 2020)..............................15, 45-46, 70

*California; Major Disaster and Related Determinations*, 57 Fed. Reg. 20684 (May 14, 1992)...............................................37

*Disaster Assistance*, 55 Fed. Reg. 2284 (Jan. 23, 1990)...............32, 40

Exec. Order No. 12673, 54 Fed. Reg. 12571 (Mar. 23, 1989)..........................................................................4, 32

FEMA, *Commonwealth of the N. Mariana Islands Typhoon Bavi EM-3647-MP*, (last updated July 6, 2026) https://www.fema.gov/disaster/3647 [https://perma.cc/LGV8-2XQS]......................................................49

FEMA, *COVID-19 Declarations*, https://www.fema.gov/covid-19 [https://perma.cc/XAJ3-NJNW] (last visited Sep. 14, 2026)...........................................................................................15

FEMA, *How a Disaster Gets Declared* (last updated July 29, 2025), https://www.fema.gov/disaster/how-declared [https://perma.cc/M56X-VH48] .......................................4

FEMA, *Reports and Notices: Disaster 4482*, https://www.fema.gov/disaster/4482/notices?page=0 [https://perma.cc/DR52-T6TP] (last visited Sep. 14, 2026)...........................................................................................47

**Regulations and Regulatory Materials (cont'd): Page(s)**

FEMA, *Webinar on Declaration Request Form and Cover Letter* (transcript), at 4 (July 2, 2012 at 2:06 pm CT), https://www.fema.gov/sites/default/files/2020-04/webinar-on-declaration-request-form-and-cover-letter-template-transcript_2012.pdf [https://perma.cc/RK32-JM9Q] .......... 50

FEMA, *3647-EM-MP Initial Notice, Commonwealth of the N. Mariana Islands; Emergency and Related Determinations*, (last updated July 15, 2026), https://www.fema.gov/disaster-federal-register-notice/3647-em-mp-initial-notice [https://perma.cc/22R8-3HES] .......... 49

IRS AOD-2026-01, 2026 WL 1455109 .......... 12

IRS, *Coronavirus and Economic Impact Payments: Guidance* (last updated June 4, 2026), https://www.irs.gov/newsroom/coronavirus-and-economic-impact-payments-guidance [https://perma.cc/P5V3-J7ZV] .......... 14

*IRS Data Book, 2020*, Pub. 55-B (June 2021), https://www.irs.gov/pub/irs-prior/p55b--2021.pdf [https://perma.cc/8S3C-AK83] .......... 67

IRS Notices:
- 2020-17, 2020-15 I.R.B. 590 .......... 14
- 2020-18, 2020-15 I.R.B. 590 .......... 14
- 2020-20, 2020-16 I.R.B. 660 .......... 14
- 2020-23, 2020-18 I.R.B. 742 .......... 14, 59
- 2020-35, 2020-25 I.R.B. 948 .......... 14
- 2020-39, 2020-26 I.R.B. 984 .......... 14
- 2020-48, 2020-29 I.R.B. 72 .......... 14
- 2020-49, 2020-27 I.R.B. 8 .......... 14
- 2020-53, 2020-30 I.R.B. 151 .......... 14

**Regulations and Regulatory Materials (cont'd):** **Page(s)**

IRS Notices (cont'd):
2020-55, 2020-35 I.R.B. 467 .......... 14
2020-56, 2020-32 I.R.B. 239 .......... 14
2020-58, 2020-34 I.R.B. 419 .......... 14
2020-65, 2020-38 I.R.B. 567 .......... 14
2021-10, 2021-7 I.R.B. 888 .......... 59
2021-12, 2021-6 I.R.B. 828 .......... 59
2021-21, 2021-15 I.R.B. 986 .......... 59-60

*Kansas; Major Disaster and Related Determinations*, 84 Fed. Reg. 38283 (Aug. 6, 2019) .......... 36

*Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act*, 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020) .......... 13-14

*Louisiana; Major Disaster and Related Determinations*, 70 Fed. Reg. 53803 (Sep. 12, 2005) .......... 37

*Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures*, 88 Fed. Reg. 8884 (Feb. 10, 2023) .......... 15-16, 44-45, 47

Rev. Proc. 2018-58, 2018-50 I.R.B. 990 .......... 9, 54, 65

*South Dakota; Major Disaster and Related Determinations*, 84 Fed. Reg. 62550 (Nov. 15, 2019) .......... 35

*Texas; Notice of Major Disaster and Related Determinations*, 44 Fed. Reg. 48344 (Aug. 17, 1979) .......... 36

Treasury Regulations (26 C.F.R.):
§301.7508A-1(g)(1)-(2) .......... 12
§301.7508A-1(g)(3)(ii)(A) .......... 72

**Regulations and Regulatory Materials (cont'd): Page(s)**

*Vermont; Major Disaster and Related Determinations*, 84 Fed. Reg. 38276 (Aug. 6, 2019) .......... 36

The White House, *President Donald J. Trump Approves California Disaster Declaration* (Mar. 22, 2020), https://trumpwhitehouse.archives.gov/briefings-statements/president-donald-j-trump-approves-california-disaster-declaration-7/ [https://perma.cc/HS5V-KMW2] .......... 14

**Other Authorities:**

Am. Heritage Dictionary of the English Language (5th ed. rev. 2016) .......... 29, 31

Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* (2016) .......... 34

Federal Rules of Appellate Procedure
Rule 3(c)(4) .......... xv
Rule 4(a)(1)(B)(i) .......... xv

H.R. Rep. No. 116-379 (2020) .......... 10, 62

Merriam Webster's Collegiate Dictionary (11th ed. 2020) .......... 29, 31

New Oxford Am. Dictionary (3d ed. 2010) .......... 29-31, 70

Richard Rubin, *Door Opens To Millions for Covid Tax Refund*, Wall St. J., May 1, 2026 .......... 66

## STATEMENT OF RELATED CASES

No other appeal from the same civil action in the Court of Federal Claims ("Claims Court") was previously before this or any other appellate court. Counsel for the United States are not aware of any case pending before this Court, the Supreme Court, or any other court of appeals that will directly affect or be directly affected by this Court's decision in the pending appeal. But counsel for the United States are aware of several cases pending in the federal district courts, the Claims Court, and the United States Tax Court raising the same issue presented in the pending appeal. *E.g.*, *Fleisher v. United States*, No. 1:26-cv-1096 (S.D.N.Y.); *W. Digit. Corp. v. United States*, No. 26-215 (Fed. Cl.); *Wepplo v. Commissioner*, No. 36722-21 (T.C.). And at least two of the Claims Court cases have been stayed pending the outcome of this appeal. *Dennis Shogren v. United States*, No. 24-877 (Fed. Cl.); *BMW (US) Holding Corp. & Subs. v. United States*, No. 25-1984 (Fed. Cl.). All of these cases may be affected by this Court's decision.

## GLOSSARY

| Abbreviation | Definition |
| --- | --- |
| Appx | Citations to the joint appendix |
| California disaster declaration | President Trump's major disaster declaration for COVID-19 in the State of California |
| COVID-19 | Coronavirus Disease 2019 pandemic |
| Claims Court | U.S. Court of Federal Claims |
| Disaster | An event qualifying as a major disaster under the Stafford Act |
| Disaster declaration | Presidential declaration of a major disaster under the Stafford Act |
| FEMA | Federal Emergency Management Agency |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| Stafford Act | Robert T. Stafford Disaster Relief and Emergency Assistance Act, Pub. L. No. 93-288, 88 Stat. 143 (May 22, 1974) (codified as amended at 42 U.S.C. §§5121-5207) |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |

## JURISDICTIONAL STATEMENT

On February 23, 2023, taxpayer Terry W. Kwong sued the United States in the Claims Court for refunds of tax penalties for his 2007, 2010, 2011, 2015, and 2016 tax years. (Appx26–27.) The Claims Court had jurisdiction over Kwong's 2015 and 2016 refund claims under 28 U.S.C. §1346(a)(1) and §§7422(a) and 6532(a)(1) of the Internal Revenue Code ("I.R.C."), 26 U.S.C.[1] But as this brief explains, the Claims Court lacked jurisdiction over Kwong's 2007, 2010, and 2011 refund claims—and it erred in concluding otherwise (Appx4-16)—because Kwong's filing of this suit was untimely as to those claims (*see infra* pp.25-38).

On March 17, 2026, the Claims Court entered a judgment that disposed of all parties' claims by awarding Kwong a refund of overpaid tax, plus interest, for only his 2007 tax year. (Appx1; *see* Appx2-3.) The United States timely appealed the Claims Court's judgment—and the interlocutory orders that merged into that judgment—on May 15, 2026. (Appx399-400.) 28 U.S.C. §2107(b)(1); Fed. R. App. P. 3(c)(4), 4(a)(1)(B)(i). This Court has jurisdiction under 28 U.S.C. §1295(a)(3).

---

[1] The 2015 and 2016 claims are not relevant to this appeal, so we do not discuss them further.

## STATEMENT OF THE ISSUE

Whether the Claims Court erred in construing the "[m]andatory 60-day extension" provision of I.R.C. §7508A(d)(1) (Supp. II 2020) as having extended tax deadlines for more than three-and-a-half years due to the President's declaration of a major disaster for the Coronavirus Disease 2019 pandemic ("COVID-19").

## STATEMENT OF THE CASE

This appeal turns on the application of I.R.C. §7508A(d), as originally enacted, to the President's COVID-19 disaster declarations. Titled "Mandatory 60-day extension," §7508A(d) gave taxpayers residing in "disaster area[s]" declared by the President an automatic postponement of tax-related deadlines for a period "beginning on the earliest incident date specified in the declaration" and "ending on the date which is 60 days after the latest incident date so specified." I.R.C. §7508A(d)(1) (Supp. II 2020). Beginning in March 2020, the President issued disaster declarations for every State due to conditions resulting from COVID-19, which the declarations described as "beginning on January 20, 2020, and continuing." The parties agree that this triggered §7508A(d)'s automatic postponement of deadlines for a period

that began on January 20, 2020. The dispute before this Court is about when the postponement period ended.

In February 2023, nearly three years after the COVID-19 disaster began, taxpayer Terry W. Kwong sued the United States in the Claims Court asserting claims for tax refunds that the IRS had disallowed more than two years earlier. The United States moved to dismiss those claims because the Internal Revenue Code sets a two-year time limit from the date of the IRS's disallowance of a refund claim for taxpayers like Kwong to file suit. I.R.C. §6532(a)(1); *see RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462-63 (Fed. Cir. 1998).

Kwong argued that his suit was made timely by §7508A(d)'s postponement of tax-related deadlines because, according to him, the postponement period that began on January 20, 2020, lasted for more than three-and-a-half years. In his view, the postponement period did not end until 60 days after the Federal Emergency Management Agency ("FEMA") closed its "incident period" for the COVID-19 disaster on May 11, 2023. But citing the statute's plain language, the United States argued that the mandatory postponement period lasted only 60

days—until March 20, 2020—because January 20, 2020, was the only "incident date specified" in the President's "declaration."

In an opinion reported at *Kwong v. United States*, 179 Fed. Cl. 382 (2025), the Claims Court agreed with Kwong, holding that §7508A(d) had postponed his filing deadline until July 10, 2023 (*i.e.*, 60 days after May 11, 2023), and that his suit was therefore timely filed. This appeal followed because the implications of the Claims Court's decision are not limited to this case. Rather, the decision implies that nearly all federal tax deadlines, including the times for filing tax returns and paying taxes, were postponed nationwide for over three-and-a-half years, with potential consequences for tens of millions of taxpayers. Indeed, since the court's decision, taxpayers have filed an avalanche of administrative refund claims and lawsuits seeking windfalls that would cost the Treasury billions of dollars.

## A. Legal background

### 1. Presidential declarations of disasters generally

The Robert T. Stafford Disaster Relief and Emergency Assistance Act, Pub. L. No. 93-288, 88 Stat. 143 (1974) (codified as amended at 42 U.S.C. §§5121-5207) ("Stafford Act") outlines the President's emergency

and disaster relief authority. As authorized by 42 U.S.C. §§5164 and 5201(a)(1), the President has delegated much of that authority to FEMA. Exec. Order No. 12673, 54 Fed. Reg. 12571, 12571 (Mar. 23, 1989). But the President has not delegated the authority, *id.*, to "declare … that a major disaster or emergency exists," 42 U.S.C. §§5170(a)-(b), 5191(a)-(c).

The dispute in this case arises from the President's declaration of a major disaster. In general, "major disaster" declarations authorize federal assistance to help communities recover from damage "caused" by "any natural catastrophe."[2] 42 U.S.C. §§5122(2), 5170-5189h; *see* FEMA, *How a Disaster Gets Declared* (last updated July 29, 2025), https://www.fema.gov/disaster/how-declared [https://perma.cc/M56X-VH48]. The President's declaration of a major disaster is "[b]ased on the request" of the "Governor of [an] affected State" or the request of the

[2] "Emergency" declarations, which are not at issue here, authorize more limited federal assistance to "lessen or avert the threat" of damage from a "catastrophe." 42 U.S.C. §5122(1). The procedures governing emergency declarations are similar and, in some respects, identical to major disaster declarations. *See* 42 U.S.C. §§5191-5193.

"Chief Executive of an affected Indian tribal government."[3] 42 U.S.C. §5170(a)-(b); *see* 44 C.F.R. §206.36.

The Stafford Act does not prescribe the content of the President's declaration, but a standard format has developed over 70-plus years of practice. *See* Bruce R. Lindsay, Cong. Rsch. Serv., R42702, *Stafford Act Declarations 1953-2016: Trends, Analyses, and Implications for Congress* 2 (2017) (noting first declaration issued in 1953 under the Federal Disaster Relief Act of 1950, Pub. L. No. 81-875, ch. 1125, 64 Stat. 1109, 1109-11). The declaration generally states that one or more adverse conditions is "of sufficient severity and magnitude to warrant a major disaster declaration" under the Stafford Act and identifies, in particular, (i) the area affected (e.g., "certain areas of the State of South Dakota"), (ii) the cause of the adverse conditions (e.g., "severe storm and flooding"), and (iii) when that cause occurred. (*See infra* pp.35-38.)

As to the latter question of when the causal incident occurred, it has long been the case that the President's answer varies with the

---

[3] The Stafford Act defines "State" as "any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands." 42 U.S.C. §5122(4). We use "State" consistent with this definition, and we focus on declarations for States going forward.

circumstances. Some declarations identify a single date (e.g., "on April 15, 2019"), others identify a defined period (e.g., "during the period of June 30 to July 21, 2019"), and still others identify an ongoing period (e.g., "beginning on April 28, 2019, and continuing"). (*See id.*)

Once the President declares a major disaster, FEMA and the affected State governor separately "execute a FEMA-State Agreement," which allows federal assistance to flow to the affected State. 44 C.F.R. §206.44(a). Among other provisions, the FEMA-State Agreement "describes the incident and the incident period for which assistance will be made available." 44 C.F.R. §206.44(b). Though part of the FEMA-State Agreement, the incident period is "established" by FEMA alone and is also "published" in the Federal Register. 44 C.F.R. §206.32(f).

FEMA regulations define both an "incident" and an "incident period." An "incident" is "any condition" that (i) meets the definition of a major disaster or emergency under the Stafford Act, and (ii) "causes damage or hardship that may result" in a Stafford Act declaration. 44 C.F.R. §206.32(e). An "incident period" is the "time interval during which the disaster-causing incident occurs." 44 C.F.R. §206.32(f). This "time interval" sets the durational limit for federal assistance under the

Stafford Act: "No Federal assistance under the Act shall be approved unless the damage or hardship to be alleviated resulted from the disaster-causing incident [that] took place during the incident period or was in anticipation of that incident." *Id.*

Notably, the term "incident date," which is used in §7508A(d), is neither defined nor used in the Stafford Act or in FEMA regulations.

### 2. Section 7508A(a)'s discretionary postponement period for tax-related deadlines

In 1997, Congress added §7508A to the Internal Revenue Code, giving the Treasury Secretary, or his delegate, "[a]uthority to postpone certain tax-related deadlines" for taxpayers he determined "to be affected by a Presidentially declared disaster." Taxpayer Relief Act of 1997, Pub. L. No. 105-34, tit. IX, subtit. B, §911(a), 111 Stat. 788, 877-78. As amended in 2002, and codified in subsection (a) of I.R.C. §7508A, this discretionary deadline-postponement authority has remained largely unchanged. *Compare* Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, tit. I, §112(a), 115 Stat. 2427, 2433-34 (2002), *with* I.R.C. §7508A(a). Although Congress later replaced the word "Presidentially" with "federally," the Secretary's authority under subsection (a) continues to depend on the President's declaration of a

disaster under the Stafford Act. *See* I.R.C. §7508A(a) (defining "federally declared disaster" by reference to I.R.C. §165(i)(5)(A), which defines it as "any disaster subsequently determined by the President of the United States to warrant assistance by the Federal Government under the [Stafford] Act").[4]

When the President declares such a disaster, §7508A(a) authorizes the Secretary to postpone for no more than one year certain tax-related deadlines for "taxpayer[s] determined by the Secretary to be affected by [the] federally declared disaster." In particular, "the Secretary may specify a period of up to 1 year that may be disregarded in determining … in respect of any tax liability of such taxpayer … whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor." I.R.C. §7508A(a).

The "acts" enumerated in "paragraph (1) of section 7508(a)"—a mandatory tax-deadline-postponement statute for military servicemembers—are comprehensive. On the taxpayer side, it includes

[4] The 2002 amendment similarly defined "Presidentially declared disaster" by reference to I.R.C. §1033(h)(3) (Supp. II 2002), which defined the term as "any disaster which … resulted in a subsequent determination by the President that [the] area [affected] warrants assistance by the Federal Government under the [Stafford] Act."

filing returns, paying taxes, filing Tax Court petitions for deficiency redeterminations, filing claims for credits or refunds, and bringing refund suits. I.R.C. §7508(a)(1)(A)-(C), (E)-(F). On the government side, it includes assessing and collecting taxes, the latter through notice and demand for payment, levies, and collection suits. I.R.C. §7508(a)(1)(D), (G)-(J). And it includes a catchall provision for "[a]ny other act required or permitted under the internal revenue laws specified by the Secretary." I.R.C. §7508(a)(1)(K); *see* Rev. Proc. 2018-58, 2018-50 I.R.B. 990 (listing acts postponed).

Thus, by incorporating all of these "acts" from §7508(a), §7508A(a) permits the postponement of virtually all tax deadlines—for up to one year—in the case of taxpayers affected by a declared disaster. Despite this broad reach, §7508A(a)'s "discretionary language" limits its application. *Abdo v. Commissioner*, 162 T.C. 148, 162 (2024). Because the Secretary "'*may* specify a period … that *may* be disregarded in determining … whether *any* of'" certain tax-related acts were timely, it is the Secretary who decides under §7508A(a) "(1) whether a period is disregarded, (2) how long a period is disregarded, (3) for whom a period

is disregarded, and (4) for what purposes a period is disregarded." *Abdo*, 162 T.C. at 162, 165 (emphasis added).

#### 3. Section 7508A(d)'s mandatory postponement period for tax-related deadlines

In December 2019, Congress added the provision at the heart of this case, I.R.C. §7508A(d), which it titled "Mandatory 60-day extension." Taxpayer Certainty and Disaster Relief Act of 2019, Pub. L. No. 116-94, div. Q, tit. II, §205, 133 Stat. 2534, 3245.[5] Congress's goal in enacting this new subsection (d) was to "provide[]" "certainty and additional time," and to "ease the burden of tax compliance," "for taxpayers affected by Federally declared disasters." H.R. Rep. No. 116-379, at 99 (2020). In relevant part, this version of subsection (d) says:

> **(d) Mandatory 60-day extension.**
>
> > **(1) In general.**—In the case of any qualified taxpayer, the period—
> >
> > > **(A)** beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and

[5] The Taxpayer Certainty and Disaster Tax Relief Act of 2019 comprises Division Q of the Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, 133 Stat. 2534 (2019).

> **(B)** ending on the date which is 60 days after the latest incident date so specified,
>
> shall be disregarded in the same manner as a period specified under subsection (a).

I.R.C. §7508A(d)(1) (Supp. II 2020).[6] This version was in effect for disasters declared between December 21, 2019, and November 14, 2021. (*See infra* p.12.)

Under §7508A(d), "[q]ualified taxpayer[s]" include individuals who reside in a "disaster area." I.R.C. §7508A(d)(2). And a "disaster area" is "the area so determined to warrant [federal] assistance," meaning the area "determined by the President" with respect to the "Federally declared disaster." I.R.C. §§7508A(d)(3), 165(i)(5). The statute does not define the term "incident date."

Subsection (d) itself does not specify what tax-related acts it covers. It says only that the "period … shall be disregarded in the same manner as a period specified under subsection (a)." I.R.C. §7508A(d)(1) (flush language). The Tax Court in *Abdo* held that this language

---

[6] Unless otherwise noted, references in this brief to §7508A(d) and its subdivisions are to this version.

"carries" over the acts enumerated in subsection (a).[7] 162 T.C. at 165-66. In other words, a disaster declaration triggers "an unambiguously self-executing postponement period" for qualified taxpayers "that incorporates," and therefore applies to, "all of the acts referenced by section 7508A(a)." *Abdo,* 162 T.C. at 165. As noted, §7508A(a) references "any of the acts described" in §7508(a)(1), which in turn includes "[b]ringing suit upon [a] claim for credit or refund," I.R.C. §7508(a)(1)(F).

Congress amended §7508A(d) in 2021. Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, div. H, tit. V, §80501, 135 Stat. 429, 1335 (2021). (*See infra* pp.51-54.) But this amended version applied only to disasters declared after November 15, 2021. *Id.* Congress again amended §7508A(d) in 2025; it is now codified at I.R.C. §7508A(e)

---

[7] *Abdo* concluded that §7508A(d) granted taxpayers an "automatic 60-day postponement period starting from January 20, 2020, … to at least March 20, 2020, to file their [Tax Court] Petition," based on the COVID-19 disaster declaration for Ohio. 162 T.C. at 169. *Abdo* also held some provisions of the Treasury Regulations interpreting §7508A(d) to be invalid. *Abdo*, 162 T.C. at 168-69 (addressing Treas. Reg. §301.7508A-1(g)(1)-(2)). Those regulations are not issue here, and the IRS has acquiesced to *Abdo*'s "holding that the COVID-19 disaster declarations created a mandatory 60-day postponement period from January 20, 2020, to March 20, 2020." IRS AOD-2026-01, 2026 WL 1455109, at *3.

(current version). Filing Relief for Natural Disasters Act, Pub. L. No. 119-29, §2, 139 Stat. 471, 471-72 (2025).

### B. Factual and procedural background

#### 1. The IRS's discretionary postponement of tax deadlines under §7508A(a) due to COVID-19

By letter dated March 13, 2020, President Trump determined that "the ongoing [COVID-19] pandemic [was] of sufficient severity and magnitude to" declare an emergency under the Stafford Act.[8] *Letter to Federal Agencies on an Emergency Determination for the Coronavirus Disease 2019 (COVID-19) Pandemic Under the Robert T. Stafford Disaster Relief and Emergency Assistance Act*, 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020).

The letter instructed the Treasury Secretary to "provide relief from tax deadlines to Americans who ha[d] been adversely affected by the COVID-19 emergency, as appropriate, pursuant to [I.R.C.] 7508A(a)." 2020 Daily Comp. Pres. Doc. 159. Following the President's direction and acting under the Secretary's delegated authority in

---

[8] As noted (*supra* p.4), the controlling declarations here are the President's *major disaster* declarations for COVID-19 (*infra* pp.14-15). We use "disaster declaration" or "disaster" to refer only to a major disaster under the Stafford Act.

§7508A(a), the IRS issued—in 2020 alone—13 notices postponing several tax-related deadlines, including postponing from April 15, 2020, to July 15, 2020, the deadline for taxpayers to file their individual returns and pay their taxes. IRS Notice 2020-23, 2020-18 I.R.B. 742.[9]

#### 2. The President's major disaster declarations for COVID-19

The President's March 13 letter also "encourage[d] all governors and tribal leaders" to request a major disaster declaration. 2020 Daily Comp. Pres. Doc. 159. And over the next few weeks, the President issued letters declaring a major disaster in every State, including California ("California disaster declaration"). The White House, *President Donald J. Trump Approves California Disaster Declaration* (Mar. 22, 2020), https://trumpwhitehouse.archives.gov/briefings-statements/president-donald-j-trump-approves-california-disaster-

[9] The other 2020 notices invoking §7508A(a) were: 2020-17, 2020-15 I.R.B. 590; 2020-18, 2020-15 I.R.B. 590; 2020-20, 2020-16 I.R.B. 660; 2020-35, 2020-25 I.R.B. 948; 2020-39, 2020-26 I.R.B. 984; 2020-48, 2020-29 I.R.B. 72; 2020-49, 2020-27 I.R.B. 8; 2020-53, 2020-30 I.R.B. 151; 2020-55, 2020-35 I.R.B. 467; 2020-56, 2020-32 I.R.B. 239; 2020-58, 2020-34 I.R.B. 419; and 2020-65, 2020-38 I.R.B. 567. *See also* IRS, *Coronavirus and Economic Impact Payments: Guidance* (last updated June 4, 2026), https://www.irs.gov/newsroom/coronavirus-and-economic-impact-payments-guidance [https://perma.cc/P5V3-J7ZV] (listing all COVID-19-related notices).

declaration-7/ [https://perma.cc/HS5V-KMW2]; *see* FEMA, *COVID-19 Declarations*, https://www.fema.gov/covid-19 [https://perma.cc/XAJ3-NJNW] (last visited, Sep. 14, 2026) (listing all COVID-19 declarations). FEMA then published a notice of the President's disaster declaration for each state in the Federal Register. *E.g.*, *California; Major Disaster and Related Determinations*, 85 Fed. Reg. 20703 (Apr. 14, 2020).

The language of the President's state-by-state disaster declarations was virtually identical. In relevant part, the California disaster declaration said: "I have determined that the emergency conditions in the State of California resulting from [COVID-19] beginning on January 20, 2020, and continuing, are of sufficient severity and magnitude to warrant a major disaster declaration under the [Stafford Act]." *Id.* at 20703.

Nearly three years later, in February 2023, FEMA published another notice in the Federal Register "amend[ing] the notices of major disaster declarations and related determinations resulting from [COVID-19] beginning on January 20, 2020." *Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures*, 88 Fed. Reg. 8884 (Feb. 10, 2023). The notice

advised that the "incident period for all COVID-19 major disaster declarations and the nationwide emergency declaration will close effective May 11, 2023," and noted that certain Stafford Act assistance would end on that date. *Id.* at 8884.

### 2. Kwong's administrative refund claims

Under I.R.C. §7422(a), "no suit or proceeding" for a refund "shall be maintained … until a claim for refund or credit has been duly filed with" the IRS. In March 2020, around the time of the President's COVID-19 declarations, Kwong filed with the IRS claims for refund of tax penalties for 2007, 2010, and 2011. (Appx172-191.) By October 26, 2020, the IRS had disallowed Kwong's claims.[10] (Appx135-161.)

### 3. Proceedings in the Claims Court

Under I.R.C. §6532(a)(1), "[n]o suit or proceeding" for a refund "shall be begun … after the expiration of 2 years from the date" that the IRS disallowed "the claim to which the suit or proceeding relates." On February 23, 2023—over two years after the IRS had denied his 2007,

[10] Kwong alleged that he had received the disallowances on earlier dates (Appx29-30), and the Claims Court never definitively resolved when the notices were issued (*see* Appx6). We use the later dates listed in the IRS's records, as they are more advantageous to Kwong.

2010, and 2011 refund claims—Kwong filed suit in the Claims Court seeking refunds of the tax penalties that he had contested in his claims before the IRS. (Appx26-30, Appx41.)

The United States moved for summary judgment, arguing that Kwong's claims were barred by I.R.C. §6532(a)(1). (Appx68-76.) Kwong countered that his suit was timely because, according to him, §6532(a)(1)'s deadline was "tolled" under §7508A(d) by the California disaster declaration. (Appx214-218.) Kwong argued that May 11, 2023—the date that FEMA had closed the "incident period" for all COVID-19 declarations—was the "'latest incident date so specified' under Section 7508A(d)." (Appx217.) According to Kwong, this meant that the "period automatically disregarded" under §7508A(d) was "January 20, 2020, through July 10, 2023 (60 days after May 11, 2023)." (Appx217.) Kwong, "a California resident at all relevant times," was thus "a qualified taxpayer entitled to an automatic 60-day postponement period … starting from January 20, 2020, … to at least July 10, 2023 … in determining Section 6532(a)'s two-year statute of limitations." (Appx217.)

The Claims Court agreed. The court held that §6532(a)(1)'s two-year deadline was "extended" by §7508A(d)'s "automatic, or 'mandatory,' extension for any qualified taxpayer in a declared disaster area," such as Kwong. (Appx10.) It further held that the mandatory extension for the COVID-19 disaster lasted from January 20, 2020, until July 10, 2023. (Appx15-16.) Thus, Kwong's suit—filed on February 23, 2023—was timely.[11] (*Id.*)

The Claims Court acknowledged that the COVID-19 disaster's length and nationwide scope were "unprecedented," and conceded that Congress "appears to have intended for [§7508A(d)] to provide routine short-term deadline extensions" for "short-term weather events affecting localized communities." (Appx12.) But the court found that §7508A(d)'s "plain meaning" dictated a contrary result. (Appx11.) According to the court, the period "beginning on the earliest incident date specified in the [disaster] declaration …, and … ending on the date which is 60 days after the latest incident date so specified" under §7508A(d) unambiguously meant: "the beginning of the disaster

[11] The Claims Court properly declined to decide "whether [§7508A(d)] provides for tolling or a postponement period" because it would not affect the outcome. (Appx16.)

declaration, through the end of the declared disaster period, and until 60 days after the end of the declared disaster period."[12] (Appx11.)

In rejecting the government's argument that the California disaster declaration (and all other COVID-19 disaster declarations) specified only one date—January 20, 2020—from which the postponement period could be calculated, the Claims Court noted that the declaration included the phrase "January 20, 2020, and continuing"; the "'and continuing,'" according to the court, "has meaning." (Appx13.) The Claims Court found support in Congress's 2021 amendment to §7508A(d), which it viewed as "ensur[ing]" that the statute "no longer [provided] an indefinite automatic extension." (Appx14.) (*See supra* p.12.) The amendment's import, the Claims Court reasoned, was that §7508A(d) had allowed "indefinite automatic extension[s]" for "continuing" disaster declarations. (Appx14.)

The Claims Court dismissed concerns about the effect of its §7508A(d) interpretation on tax administration and the broad power that its interpretation gave FEMA to suspend tax deadlines. (Appx15.)

---

[12] Contrary to the Claims Court's puzzling suggestion (Appx11), the government *did* dispute this purported "plain meaning" of §7508A(d), (*see* Appx365-368).

The court thought it "unlikely that many taxpayers would still be able to bring a timely claim based on the 2019 statute," and it reasoned that the "executive branch is supposed to work together." (*Id.*)

The parties later agreed to a judgment awarding Kwong a refund for only his 2007 tax year. (Appx1-3.) The United States appeals from that judgment, including the Claims Court's opinion denying its summary judgment motion for Kwong's 2007, 2010, and 2011 claims. (Appx399-400.)

## SUMMARY OF ARGUMENT

At its core, this case is about how to calculate a time "period." Section 7508A(d) explains how to calculate that period: it starts on "the earliest incident date"—a day, month, and year—and ends "60 days after the latest incident date"—a day, month, and year.
Section 7508A(d) also explains where the earliest and latest incident date comes from: the President's disaster declaration. Equipped with that clear instruction, calculating §7508A(d)'s postponement period is simple: identify the President's disaster declaration, find the incident dates in that declaration, and add 60 days to the latest one.

That simple task did not change when the President's disaster declarations for COVID-19 "specified" only one incident date, "January 20, 2020," along with the phrase "and continuing." Rather, a faithful application of §7508A(d)'s text requires that the 60 days be added to January 20, 2020, the only "incident date"—and thus the "earliest" *and* "latest" one—in the President's disaster declaration. Indeed, the COVID-19 disaster declarations' use of only one incident date was not uncommon but followed from a long line of past Presidential disaster declarations specifying only one incident date, alone or with the phrase "and continuing." Against the backdrop of that consistent practice, Congress's tying of §7508A(d)'s postponement period to an "incident *date*" has meaning, and it shows that Congress accounted for the array of ways in which disaster declarations specified when a disaster-causing incident occurred. In short, the statute means what it says—a date is a date, not "and continuing."

The Claims Court ignored §7508A(d)'s text rather than apply it. In concluding that §7508A(d)'s postponement period was over three-and-a-half years, the court first and fundamentally erred by replacing §7508A(d)'s "incident date" with FEMA's "incident period" for the

COVID-19 disaster. The term "incident period" is nowhere in §7508A(d); it is a term FEMA created to administer disaster assistance under the Stafford Act. Congress was aware of the term when it enacted §7508A(d) and consciously chose *not* to adopt it. We know this because in the same Title of the same Act in which Congress enacted §7508A(d), Congress separately defined "incident period" as a FEMA-determined period and used that term *20* times in *other* disaster tax-relief provisions—but not in §7508A(d).

The Claims Court not only read into §7508A(d) a term that Congress chose not to use, but it also defied §7508A(d)'s clear instruction to look only to the disaster *declaration* issued by the *President* for the incident date. An "incident period" is established by FEMA, published as a notice in the Federal Register, and part of the FEMA-State Agreement that sets the terms of disaster assistance. None of these incident-period aspects involve the President, and none of them are relevant to his declaration.

The Claims Court erred in other ways too. To justify its reliance on FEMA's incident period, the court mistakenly gave "meaning" to the disaster declarations' "and continuing." This case is about interpreting

a statute not a disaster declaration. And by giving meaning to the declaration, the court again elided §7508A(d)'s textual requirement that its postponement period be determined from an "incident date specified" in the President's disaster "declaration." Nor was it necessary to give extra meaning to "and continuing"; it already has meaning for the administration of disaster assistance under the Stafford Act. The Claims Court was also wrong to resort to §7508A(d)'s subsequent amendment history instead of simply reading the words of the statute. The conclusion that the court drew from that history—that §7508A(d) allows indefinite postponement periods for "continuing" disasters—is belied by §7508A(d)'s text.

Although §7508A(d)'s text alone shows that the postponement period was 60 days and not over three-and-a-half years, other structural and contextual clues buttress that conclusion. First, §7508A establishes two postponement periods, a discretionary one and a mandatory one. A 60-day mandatory postponement period maintains the independent operation of the up-to-one-year discretionary postponement period, but the Claims Court's over three-and-a-half-year mandatory postponement period destroys this distinction. Statutes should be read to give

meaning to every word, not eliminate entire aspects of a statutory scheme. Second, §7508A(d)'s heading—"Mandatory *60-day* extension"—shows that Congress envisioned the postponement period to be automatic and brief, not indefinite. Third, Congress's concern about taxpayer "certainty," as expressed in the legislative history, further supports the view that the mandatory postponement period was 60 days all along, not an indefinite period that required administrative action by FEMA, years after the President's declaration, to close.

Finally, the Claims Court's interpretation produces absurd results. According to the court's reading, tax administration was effectively brought to a standstill for over three-and-a-half years: virtually no one was required to file returns or pay taxes, nor was the government required to assess or collect taxes. Contrary to the court's view, this unprecedented tax-free period has the potential to affect tens of millions of taxpayers and cost the public fisc tens of billions of dollars. More than that, the Claims Court, by relying on FEMA's incident period, has empowered FEMA to set the terms of this tax-free period—a power it has never claimed. In addition to making no sense, none of this is required by §7508A(d)'s text. Rather, that text granted Kwong a

60-day postponement period starting on January 20, 2020, and nothing else. His refund suit is therefore untimely, and this Court should reverse the Claims Court's judgment.

## ARGUMENT

### The Claims Court incorrectly interpreted §7508A(d)'s "60-day extension" as having lasted over three-and-a-half years

#### Standard of review

The interpretation of I.R.C. §7508A(d) is a legal question that this Court reviews de novo. *See, e.g.*, *Blue Sky the Color of Imagination, LLC v. United States*, 160 F.4th 1334, 1338 (Fed. Cir. 2025).

#### A. Section 7508A(d)'s text compels the conclusion that the postponement period ended 60 days after January 20, 2020, the only "incident date specified" in the President's disaster "declaration"

Statutory interpretation "always [] start[s] with the text." *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024). The text is "also where the inquiry should end [if] the statute's language is plain." *Culbertson v. Berryhill*, 586 U.S. 53, 58-59 (2019) (citation omitted). Section 7508A(d)'s language is plain: it instructs that the "disregarded" "period … begin[s] on the earliest incident date specified in the declaration to which the disaster area … relates, and … end[s] on the

date which is 60 days after the latest incident date so specified." I.R.C. §7508A(d)(1).

A straightforward reading of that instruction reveals three pertinent characteristics about the postponement period:

(1) its start and end are each tied to a specific date—that is, a day, month, and year—not a non-specific phrase like "and continuing";

(2) the dates to which its start and end are tied must be dates specified by the President in his declaration of the disaster, not by FEMA; and

(3) when the President declares a "continuing" disaster but specifies only one date—as the President did here and had done for other disasters before §7508A(d) was enacted—that single date is both the "earliest" and the "latest" incident date "so specified."

As detailed below, these characteristics unambiguously show that the postponement period here started on January 20, 2020—the only "incident date specified" in the President's California disaster

declaration—and ended "60 days after," on March 20, 2020, making Kwong's refund suit untimely.

In reaching the opposite conclusion, the Claims Court skirted §7508A(d)'s text to conflate the non-date words "and continuing," as used by the President in his declaration, with a date specified by FEMA nearly three years later in its administrative announcement of the disaster's "incident period." But as we explain, the court's justifications for doing so contradict §7508A(d)'s plain instruction to calculate its postponement period from the "earliest incident date specified in the declaration" and the "latest incident date so specified." When Congress enacted §7508A(d), it was well aware both that Presidential disaster declarations sometimes specify a single date followed by the words "and continuing," and that FEMA regulations require that agency to determine a declared disaster's "incident period." If Congress had wanted those to play a role in the calculation of §7508A(d)'s postponement period, Congress would not have tied the period exclusively to the earliest and latest incident date specified in the President's disaster declaration.

### 1. The words "and continuing" are not a "date," much less a "specified" incident date

The Claims Court's erroneous holding followed from its effort to give meaning to the Presidential declaration's use of the words "and continuing" after its specification of the January 20, 2020, incident date. But while those words have meaning for other purposes, they cannot have meaning for purposes of §7508A(d)'s postponement period because "and continuing" is not a date.

The postponement period starts and ends with a date: "the earliest incident date specified in the declaration" and "the date which is 60 days after the latest incident date so specified." Congress did not define the terms "earliest incident date" and "latest incident date," nor do federal regulations. In the absence of a statutory or regulatory definition, the terms' ordinary meaning at the time of §7508A(d)'s enactment controls. *E.g.*, *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020). Dictionary definitions provide statutory terms' ordinary meaning. *See, e.g.*, *Bayer AG v. Housey Pharms., Inc.* 340 F.3d 1367, 1371 (Fed. Cir. 2003) ("Dictionaries of the English language provide the ordinary meaning of words used in statutes.")

Focusing on the terms' shared compound noun—"incident date"—subsection (d) keys the postponement period to "the time stated in terms of the day, month, and year" of "[a] particular occurrence." Am. Heritage Dictionary of the English Language 462, 888 (5th ed. rev. 2016); *accord* New Oxford Am. Dictionary 441, 878 (3d ed. 2010); *see* Merriam Webster's Collegiate Dictionary 317, 629 (11th ed. 2020); *cf.* *Burnet v. Willingham Loan & Tr. Co.*, 282 U.S. 437, 439 (1931) ("'date' … plainly mean[s] the year and day of the month"). In the disaster-declaration context, the occurrence is the "damage or hardship" causing "condition" that "result[s] in a Presidential" disaster declaration under the Stafford Act. 44 C.F.R. §206.32(e) (defining "incident"). Thus, the postponement period is tied to the date or dates "specified in the declaration"—in terms of the day, month, and year—of the disaster-declaration-producing occurrence.

Section 7508A(d)'s instruction that the incident date must be "specified" dispels any doubt that such date must be a particular day, month, and year. When something is "specified" it is "state[d] explicitly or in detail." Am. Heritage Dictionary of the English Language 1682 (5th ed. rev. 2016); *accord* Merriam-Webster's Collegiate Dictionary

1198 (11th ed. 2020); *see* New Oxford Am. Dictionary 1676 (3d ed. 2010). And to state a date "in detail" naturally means to include that date's details—its day, month, and year.

At a minimum, moreover, this means that the phrase "and continuing" is irrelevant to §7508A(d). "And continuing" is neither a date, nor is it specific. It is general, forward-looking language that is relevant for the administration of disaster assistance (*see infra* pp.48-51), but not for determining §7508A(d)'s "specified" "incident date." In treating that language as a basis to import a date from outside the President's declaration, the Claims Court erred.

#### 2. The incident date must be specified in the President's disaster "declaration," not by FEMA

The Claims Court's reliance on a date determined by FEMA in 2023 as the "latest incident date" was erroneous, too, because §7508A(d) prescribes where the "incident date" comes from: the President's declaration, which here contained a single date, January 20, 2020.

Start with subsection (d)'s immediate text. Under §7508A(d)(1)(A) the "earliest incident date" must be "specified in the declaration to which the disaster area … relates." The "latest incident date" must also be "so specified." I.R.C. §7508A(d)(1)(B). Meaning, specified "in the

condition or manner expressed or indicated," Am. Heritage Dictionary of the English Language 1660 (5th ed. rev. 2016), or "in the way described," New Oxford Am. Dictionary 1656-57 (3d ed. 2010). *See id.* ("referring back to something previously mentioned"); Merriam-Webster's Collegiate Dictionary 1182 (11th ed. 2020). Section 7508A(d) thus requires that both the "earliest" and the "latest" incident date be "specified in the declaration to which the disaster area … relates."

Moving further down, subsection (d) makes clear that the declaration to which the disaster area relates is the President's disaster declaration, not subsequent pronouncements by FEMA.

Section 7508A(d)(3) defines "disaster area" by cross-reference to I.R.C. §165(i)(5)(B). That section, in turn, defines "disaster area" in concert with "Federally declared disaster." I.R.C. §165(i)(5). The latter means "any disaster subsequently *determined by the President* … to warrant [federal] assistance … under the [Stafford Act]." I.R.C. §165(i)(5)(A) (emphasis added). The former means the "area *so determined* to warrant such assistance." I.R.C. §165(i)(5)(B) (emphasis added). Both definitions center the President: he determines the existence of a federally declared disaster and the disaster area that warrants

assistance. The declaration to which the disaster area relates, then, is the President's disaster declaration under the Stafford Act.

The Stafford Act confirms this reading. Only the "President may declare … that a major disaster or emergency exists" under the Stafford Act. 42 U.S.C. §§5170(a)-(b), 5191(a)-(c). While the President has delegated much of his Stafford Act authority to FEMA, he has retained sole authority to declare a major disaster or emergency. 54 Fed. Reg. at 12571; *see Disaster Assistance*, 55 Fed. Reg. 2284, 2287 (Jan. 23, 1990) ("The ultimate decision whether to activate the Act's authorities is the President's.") In other words, while FEMA's actions are relevant to the administration of Stafford Act assistance, they are not relevant to the interpretation of §7508A(d) because only the President can issue a Stafford Act "declaration."

### 3. The President's disaster declaration specified only one incident date: January 20, 2020

All agree that the relevant declaration here is the President's California disaster declaration. That declaration, like the COVID-19 disaster declarations for every other U.S. jurisdiction, specified that "the emergency conditions … resulting from [COVID-19] beginning on *January 20, 2020, and continuing*, are of sufficient severity and

magnitude to warrant a major disaster under the [Stafford Act]." (*Supra* p.15.) Since the word "continuing" is not a date under any definition of the term, the only "incident date"—day, month, and year—"specified" in the declaration is January 20, 2020.

Under §7508A(d)'s plain text, then, the postponement period began on January 20, 2020, and ended 60 days later, on March 20, 2020.[13] Kwong's suit-filing deadline under I.R.C. §6532(a)(1) was—at the latest—October 26, 2022. It thus fell outside §7508A(d)'s postponement period, and his suit is untimely.[14]

---

[13] After March 20, 2020, the IRS exercised its discretion under §7508A(a) to further postpone certain deadlines. (*See supra* p.14 & n.9.)

[14] Although Kwong argued that §7508A(d) provides for tolling, rather than postponement, the Claims Court correctly declined to decide that question (Appx16) because the difference is immaterial here. The government's position is that the postponement period affects only deadlines that fall within it; it does not provide for tolling. That is, if a taxpayer is required to perform an act by a due date *within* the postponement period, only then will she have until the last day of the period to perform the act. *See, e.g.*, *Jackson v. United States*, 100 Fed. Cl. 34, 45 (2011) (interpreting §7508A(a)'s postponement period). But even if the statute provided for tolling, adding 60 days to Kwong's suit-filing deadline (moving it to December 25, 2022) *would not* make his lawsuit timely, just as postponing the deadline for more than three-and-half years *would* make his lawsuit timely, even under the government's view. Thus, the outcome here turns solely on the duration of the period.

**a. January 20, 2020, is both the "earliest" and "latest" incident date under §7508A(d)**

Although the adjectives "earliest" and "latest" modify the beginning incident date and the ending incident date, nothing in §7508A(d) suggests that those dates must be different. To the contrary, "earliest" and "latest" must be understood by reference to the compound noun that they modify: "incident date." *See FCC v. AT&T Inc.*, 562 U.S. 397, 405 (2011) (statutory language should be "construe[d] … in light of the terms surrounding it") (citation modified). If there is only one incident date, then the earliest and latest incident date are the same.

This makes sense as a grammatical matter too. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 77 (2023) (relying on "basic tenets of grammar" to interpret statute). Earliest and latest are "superlative" adjectives; they "express[] the relationship between at least three things and denote[] an extreme of intensity or amount in a particular shared quality." Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 66 (2016). Because they are relational, "earliest" and "latest" play a role only when there are multiples of the noun ("incident date") that they compare. *Cf. id.* (using "the biggest house on the block" as an example). Here, there is only one incident date specified in the

President's California disaster declaration, and it is therefore the only incident date that "earliest" and "latest" can modify and compare. It is, by default, the earliest *and* latest incident date.

### b. Past Presidential disaster declarations routinely listed only one incident date

This application of §7508A(d) does not deprive "earliest" and "latest" of meaning; Congress's choice to make the postponement period contingent on an earliest and latest "incident date" reflects its understanding of Presidential disaster declarations' varied identification of when a disaster-causing incident occurs.

A review of Presidential disaster declarations pre-dating §7508A(d)'s enactment shows that most declarations specified at least two incident dates. *E.g.*, *South Dakota; Major Disaster and Related Determinations*, 84 Fed. Reg. 62550 (Nov. 15, 2019) ("I have determined that the damage in certain areas of the State of South Dakota resulting from severe storms, tornadoes, and flooding during the period of June 30 to July 21, 2019, is of sufficient severity and magnitude to warrant a major disaster declaration …."). Thus, in those ordinary cases, there are two incident dates, an "earliest" and a "latest," from which §7508A(d)'s postponement period is calculated.

The same review of pre-§7508A(d) disaster declarations also shows, however, that the declarations often specified only one incident date, by itself or with the phrase "and continuing." *E.g.*, *Vermont; Major Disaster and Related Determinations*, 84 Fed. Reg. 38276 (Aug. 6, 2019) ("I have determined that the damage in certain areas of the State of Vermont resulting from a severe storm and flooding on April 15, 2019, is of sufficient severity and magnitude to warrant a major disaster declaration …."); *Kansas; Major Disaster and Related Determinations*, 84 Fed. Reg. 38283 (Aug. 6, 2019) ("I have determined that the damage in certain areas of the State of Kansas resulting from severe storms, straight-line winds, tornadoes, flooding, landslides, and mudslides beginning on April 28, 2019, and continuing, is of sufficient severity and magnitude to warrant a major disaster declaration ….").

Moreover, this common practice of listing only one incident date in disaster declarations, with or without the words "and continuing," was already longstanding when Congress enacted §7508A(d) in 2019. *See, e.g.*, *Texas; Notice of Major Disaster and Related Determinations*, 44 Fed. Reg. 48344 (Aug. 17, 1979) ("I have determined that the damage in certain areas of the State of Texas resulting from severe storms and

flash flooding beginning on or about July 24, 1979, is of sufficient severity and magnitude to warrant a major disaster declaration ….”); *California; Major Disaster and Related Determinations*, 57 Fed. Reg. 20684 (May 14, 1992) (“I have determined that the damage in certain areas of the State of California, resulting from earthquakes and continuing aftershocks commencing on April 25, 1992, and continuing, is of sufficient severity and magnitude to warrant a major disaster declaration ….); *Louisiana; Major Disaster and Related Determinations*, 70 Fed. Reg. 53803 (Sep. 12, 2005) (“I have determined that the damage in certain areas of the State of Louisiana, resulting from Hurricane Katrina beginning on August 29, 2005, and continuing, is of sufficient severity and magnitude to warrant a major disaster declaration ….”).

Congress was presumably aware of this practice of listing only one date, with or without “and continuing,” when it enacted §7508A(d). *See United States v. Wilson*, 290 F.3d 347, 357 (D.C. Cir. 2002) (“Congress is presumed to be aware of established practices and authoritative interpretations of the coordinate branches.”); *cf. Monsalvo v. Bondi*, 604 U.S. 712, 728 (2025) (“Congress’s work … should be read in light of the government’s longstanding regulatory practice.”). Congress therefore

understood that a Presidentially declared disaster could last a single day; that is, have literally the same "earliest" and "latest" incident date. And Congress understood that Presidentially declared disasters could have an indefinite, "continuing" duration. Yet it still conditioned the postponement period in §7508A(d) on an identifiable "earliest" and "latest" "incident *date*" in the President's "declaration."

That congressional choice must have meaning. Said differently, the postponement period is not determined from an unspecified, to-be-determined date but from an identifiable date specified in the President's disaster declaration. By attempting to give meaning to the declaration's use of the words "and continuing," the Claims Court *deprived* of meaning Congress's choice *not* to make any special provision in §7508A(d) for declarations of "continuing" disasters.

### B. The Claims Court's conclusion that the postponement period lasted over three-and-a-half years contravenes the statute's plain text and important context

Despite professing adherence to §7508A(d)'s "express text" (Appx12), the Claims Court largely ignored that text in interpreting the statute to conclude that Kwong's suit was timely. First, it erroneously looked to FEMA's notice closing the COVID-19 disaster's "'incident

period' … 'effective May 11, 2023'" to find §7508A(d)'s latest "incident date." (Appx11.) In doing so, the court (i) ignored Congress's intentional choice to make §7508A(d)'s postponement period contingent on "incident date[s]" not an "incident period," and (ii) looked beyond the statutorily prescribed disaster declaration by the President. Moreover, contrary to the Claims Court's mistaken belief, none of that was even necessary, much less permissible, to give "meaning" to the California disaster declaration's phrase "and continuing." (Appx13.) The Claims Court also erred in resorting to Congress's later amendment of §7508A(d). (Appx14.) Subsequent amendments are a "hazardous" way to interpret statutes, and the conclusion that the court drew from §7508A(d)'s amendment history—that it allowed indefinite postponement periods—was wrong.

### 1. The Claims Court incorrectly substituted FEMA's "incident period" for §7508A(d)'s "incident date"

#### a. Congress intentionally chose *not* to tie the postponement period to the FEMA-determined "incident period"

"Incident period" is a term of art that Congress intentionally chose *not* to use when it enacted §7508A(d). Neither the Stafford Act nor §7508A(d) use the term "incident period." It is instead a term FEMA

created and has long relied on to administer federal assistance following a Presidential disaster declaration. FEMA, by regulation, has defined "incident period" since 1990 as:

> The time interval during which the disaster-causing incident occurs. No Federal assistance under the Act shall be approved unless the damage or hardship to be alleviated resulted from the disaster-causing incident which took place during the incident period or was in anticipation of that incident. The incident period will be established by FEMA in the FEMA-State Agreement and published in the Federal Register.

55 Fed. Reg. at 2292 (publishing final regulations); *accord* 44 C.F.R. §206.32(f).

Congress is presumed to be aware of existing law when it enacts statutes. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014). Considering FEMA's nearly 30-year-old "incident period" definition, Congress could have easily pegged §7508A(d)'s postponement period to FEMA's "incident period" if it wished, but "[i]t did not." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823 (2024).

But this Court need not presume what Congress knew when it enacted §7508A(d) because its contemporaneous enactments make clear: Congress not only understood the distinction between the

President's disaster declaration and FEMA's separate determination of the associated "incident period," but also purposefully chose *not* to tie the mandatory postponement period to the FEMA-determined incident period. Indeed, in the same Title of the same Act in which it enacted §7508A(d), Congress also enacted *other* tax-relief provisions that used the term "incident period" *20 times* and expressly defined it as "the period specified by [FEMA] as the period during which such disaster occurred." Taxpayer Certainty and Disaster Tax Relief Act of 2019, §201(4), 133 Stat. at 3236 (defining "incident period"); *id.* §§201(1)(A), 202(a)(4)(A), 202(b)(2)-(3), 202(c)(2)-(3), 203(b)(1), 203(b)(3)(B), 204(b)(3), 204(c)(2)-(3), 207(c)(1), 133 Stat. at 3236, 3238-42, 3244, 3246 (using "incident period"). Moreover, that definition's reference to "such disaster" means "the disaster by reason of which a major disaster was declared" "*by the President* under section 401 of the [Stafford] Act." *Id.* §201(1), (3), 133 Stat. at 3236 (emphasis added).

Further still, §7508A's neighboring statute—§7508—ties its "disregarded" period to another "period" of time, as opposed to a "date." Like §7508A(d), §7508 imposes a mandatory postponement period on tax deadlines for military servicemembers. But unlike §7508A(d),

§7508 ties the postponement period to a military servicemember's "*period* of service." I.R.C. §7508(a) (emphasis added). That is, "the period of service in such area or operation, plus the period of continuous qualified hospitalization attributable to such injury, and the next 180 days thereafter, shall be disregarded." I.R.C. §7508(a)(1). Congress has used this "period of service" language in the Code since 1951. Act of Jan. 2, 1951, Pub. L. No. 81-908, ch. 1196, 64 Stat. 1136, 1136-37 (amending what was then I.R.C. §3804 (1946 & Supp. V. 1952)).

Thus, Congress's use of the unique term "incident date" in §7508A(d)—while simultaneously tying other types of disaster-related tax relief to the FEMA-determined "incident period" and having previously tied other mandatory tax-deadline relief to a "period of service"—reflects an intentional decision to tie §7508A(d)'s postponement period to *dates* specified in the *President's* disaster declaration. "'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Salinas v. United States R.R. Ret. Bd.*, 592 U.S. 188, 196 (2021) (quoting *Russello v. United States*, 464

U.S. 16, 23 (1983)). And where Congress uses language "elsewhere in the [same] code" that it did not use, but "could easily have used," in another code provision, the "absence" of that language "undercuts … efforts to read it in." *Patel v. Garland*, 596 U.S. 328, 341-42 (2022) (discussing provisions in the "immigration code").

The bottom line is that Congress knew how to make statutory deadlines contingent on the conclusion of an "incident period" or a "period" when it enacted §7508A(d); it instead made §7508A(d)'s postponement period contingent on an "incident date." The Claims Court failed to honor that congressional choice by swapping the statutory "incident date" with FEMA's regulatory "incident period."

#### b. The "incident period" was neither set by the President, nor stated in his declaration

The Claims Court's reliance on FEMA's "incident period" also flouts §7508A(d)'s requirement that the "incident date" be "specified" in the disaster "declaration" issued by the President. That is, §7508A(d) specifies where (the declaration) and who (the President) the incident date comes from. Contrary to those requirements, the "incident period" is "established" by FEMA, "published" in the Federal Register, and part of the FEMA-State Agreement. 44 C.F.R. §§206.32(f), 206.44(b). The

FEMA-State Agreement is executed—not by the President—but by "the FEMA Regional Administrator or his/her designee" and the affected State's governor. 44 C.F.R. §206.44(a). In short, by conflating "incident period" with "incident date," the Claims Court looked to the wrong document and the wrong actor.

Nor did FEMA's notice closing the COVID-19 disaster's incident period ("incident period notice") somehow amend the President's disaster declarations to establish a "latest incident date" under §7508A(d). By its own terms, FEMA's incident period notice amended its prior notices, not the President's disaster declarations themselves. The incident period notice's "Summary" says that it "amends the *notices* of major disaster declarations and related determinations resulting from [COVID-19] beginning on January 20, 2020," that FEMA published after the President had declared a disaster. 88 Fed. Reg. at 8884 (emphasis added) (all caps omitted). The incident period notice then lists each "*Notice* of a Major Disaster Declaration" it amended. *Id.* at 8884-86 (emphasis added). In one isolated instance, the incident period notice describes its list of jurisdiction-by-jurisdiction amendments as a list of "amendments to the COVID-19 major disaster

declarations." *Id.* at 8884. But that is plainly inconsistent with the dozens of listed amendments themselves, and FEMA's own summary of the incident period notice.

At all events, FEMA has no general authority to issue or amend a Presidential disaster declaration. As we have explained, only the President can make such declaration, and §7508A(d) makes clear that it is the President's declaration that matters for calculating its postponement period. (*Supra* pp.30-32.) To be sure, each of the President's COVID-19 disaster declarations "authorized" FEMA "to make changes to this declaration for the approved assistance to the extent allowable under the Stafford Act." *E.g.*, 85 Fed. Reg. at 20703. But this delegation includes two important limitations that render it irrelevant.

First, the authorized changes are limited to the "approved assistance." This limitation makes sense because the President has delegated to FEMA authority to "determine and designate the types of assistance to be made available" and to "designate the affected areas eligible for supplementary Federal assistance under the Stafford Act." 44 C.F.R. §206.40(a)-(b). Second, the authorized changes must be

"allowable under the Stafford Act." Nothing in the Stafford Act speaks about amending the President's disaster declaration, much less changing the declaration's "incident date" for purposes of §7508A(d). At most, FEMA's regulations allow affected States to "request that additional areas or types of supplementary Federal assistance be authorized" "[a]fter a declaration by the President"; and if approved, the additional assistance or areas are "added to the declaration" and "published in the Federal Register." 44 C.F.R. §206.40(c). But adding "additional areas or types" of Stafford Act assistance is far afield from changing the declaration's incident date and thereby changing the postponement period for tax deadlines under §7508A(d).

FEMA's subsequent "amendments" to its California-disaster-declaration notice reflect this understanding. The initial notice approved only "Individual Assistance limited to the Crisis Counseling Program in all areas in the State of California" and assistance for certain "emergency protective measures." 85 Fed. Reg. at 20703. Later amendments authorized additional federal assistance, like more "Federal funds for emergency protective measures" (*California; Amend. No. 2 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 20184

(Apr. 16, 2021)), "Individual assistance [for] COVID-19 Funeral Assistance" (*California; Amend. No. 3 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 23413 (May 3, 2021)), and "assistance under the Hazard Mitigation Grant Program," (*California; Amend. No. 5 to Notice of a Major Disaster Declaration*, 86 Fed. Reg. 53091 (Sep. 24, 2021)).[15]

FEMA's incident period notice is of a piece with those prior amendments. Aside from amending its declaration notices to close the incident period on May 11, 2023, the only other information provided in the incident period notice related to disaster assistance: "Eligibility of work and costs reimbursable through Public Assistance funding will end on [May 11, 2023]." 88 Fed. Reg. at 8884. Thus, FEMA's incident period notice is relevant only to its administration of federal assistance under the Stafford Act, and not to §7508A(d)'s instruction to calculate the postponement period from the "incident date" in the President's disaster declaration.

[15] FEMA issued nine amendments to the California-disaster-declaration notice. *See* FEMA, *Reports and Notices: Disaster 4482*, https://www.fema.gov/disaster/4482/notices?page=0 [https://perma.cc/DR52-T6TP] (last visited Sep. 14, 2026).

### 2. The Claims Court incorrectly elevated the declaration's text over §7508A(d)'s text

In addition to wrongfully relying on FEMA's incident period, the Claims Court also emphasized the wrong text along the way to that unfounded reliance. This case involves the interpretation of §7508A(d), and "the text of a law controls" its interpretation, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). That is, the interpretive task is to determine the *statutory text*'s meaning. The Claims Court instead thought it had to give "meaning" to the California disaster declaration's "and continuing." (Appx13.) But a disaster declaration is not a statute; treating it as such was an error.

And by purporting to give meaning to the disaster declaration, the Claims Court deprived §7508A(d) of meaning. The court ignored §7508A(d)'s directive that the postponement period starts and ends based on an "incident date" "specified" in the President's "declaration." The Claims Court made no attempt to explain how "and continuing" is an incident date specified in the President's declaration under §7508A(d)—because it isn't. It is forward-looking language indicating that the incident is ongoing, not language specifying an additional date. There is only one incident date specified in the California disaster

declaration, January 20, 2020. It is thus the only date from which §7508A(d)'s postponement period can be calculated.

This plain reading of §7508A(d) does not deprive the declaration's text of meaning either. The declaration's "and continuing" does have meaning—for the administration of federal assistance under the Stafford Act. This is because, as a practical matter, FEMA derives its incident period from the date (or dates) specified in the President's declaration, and from the declaration's description of an incident as "continuing." *E.g.*, *compare* FEMA, *3647-EM-MP Initial Notice, Commonwealth of the N. Mariana Islands; Emergency and Related Determinations*, (last updated July 15, 2026), https://www.fema.gov/disaster-federal-register-notice/3647-em-mp-initial-notice [https://perma.cc/22R8-3HES] ("I have determined that the emergency conditions … beginning on July 2, 2026, and continuing, are of sufficient severity to warrant an emergency declaration …."), *with* FEMA, *Commonwealth of the N. Mariana Islands Typhoon Bavi EM-3647-MP*, (last updated July 6, 2026)

https://www.fema.gov/disaster/3647 [https://perma.cc/LGV8-2XQS] ("Incident period: Jul 2, 2026, and continuing").[16]

This is what happened here. Following from the President's disaster declarations, FEMA initially adopted "'January 20, 2020 and continuing'" as the incident period for the COVID-19 disaster. Elizabeth M. Webster, Erica A. Lee, & William L. Painter, Cong. Rsch. Serv., R46326, *Stafford Act Declarations for COVID-19 FAQ* 5 & n.20 (2020) (recounting that FEMA's public website at the time identified the "incident period" for the COVID-19 disaster as "January 20, 2020 and continuing"). FEMA later closed the incident period effective May 11, 2023, as we have explained. Therefore, the declaration's "and continuing" meant that the disaster-causing condition (i.e., COVID-19) was ongoing, and that federal assistance would be available for damage that occurred while that condition persisted and until FEMA closed the incident period. 44 C.F.R. §206.32(f) (defining "incident period"); *see* 44

[16] FEMA requires that declaration-requesting States include their proposed incident period—and whether the incident is "continuing"— in their request to the President. FEMA, *Webinar on Declaration Request Form and Cover Letter* (transcript), at 4 (July 2, 2012 at 2:06 pm CT), https://www.fema.gov/sites/default/files/2020-04/webinar-on-declaration-request-form-and-cover-letter-template-transcript_2012.pdf [https://perma.cc/RK32-JM9Q].

C.F.R. §206.44(c) (noting that the incident period can either be "amend[ed]" or "close[d]"). But because "and continuing" is not an incident date specified in the President's declaration, it has no role in determining the postponement period's length under §7508A(d).

### 3. The Claims Court read too much into Congress's later amendment of §7508A(d)

The Claims Court compounded its "and continuing" error by relying on §7508A(d)'s later amendment to support its interpretation of the statute. Congress amended §7508A(d) in 2021 to apply to disasters declared after November 15, 2021. (*Supra* p.12.) But even though the amendment thus did not apply to the COVID-19 disaster declarations issued in March 2020, including the declaration for California at issue here, the Claims Court still focused on how the amendment changed the calculation of postponement periods. (Appx14.) Under the amendment, the period "begin[s] on the earliest incident date specified in the declaration … , and … end[s] on the date which is 60 days after the later of such earliest incident date … or the date such declaration was issued." I.R.C. §7508A(d)(1) (Supp. III 2021). In the Claims Court's eyes, this turned §7508A(d)'s postponement period from "an unlimited period … to a maximum of 60 days." (Appx10*; accord* Appx14.)

But for starters, the Claims Court shouldn't have relied on subsequent congressional action at all. "The views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *S. Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) (citation modified). This is because a later amendment "hardly means that [the statute] did not previously cover the conduct in question." *Bates v. United States*, 522 U.S. 23, 32 (1997). Otherwise said: while the Claims Court viewed §7508A(d)'s amendment as revealing Congress's original intent to allow indefinite postponement periods, the same amendment can just as easily be read as clarifying Congress's original intent to *disallow* indefinite postponement periods. *See Commissioner v. Est. of Sternberger*, 348 U.S. 187, 194 (1955) ("Subsequent amendments have clarified and not changed th[e] [earlier] principle.") Whatever the amendment's meaning, Congress's later action cannot supplant §7508A(d)'s text, which unambiguously ties the postponement period to an incident date in the President's declaration. This unambiguous instruction negates any idea that the mandatory postponement period could be indefinite.

The Claims Court was also wrong in thinking that the only way to give "'real and substantial effect'" to §7508A(d)'s amendment was to conclude that the unamended statute had allowed for indefinite postponement periods. (Appx14 (citation omitted).) The amendment has at least two "real and substantial" effects without reading §7508A(d) to grant indefinite postponement periods. First, the amendment halted the possibility of a postponement period ending before the President issued a disaster declaration. Take the California disaster declaration: it was not issued until March 22, 2020, but provided an incident date of January 20, 2020. Under §7508A(d), the postponement period ended 60 days from January 20, 2020, on March 20, 2020, and thus two days before the disaster declaration's issuance. But under the amendment, the postponement period would run until 60 days *after* the declaration's issuance, since it was later than the specified incident date.

Second, the amendment changed the scope of acts covered by §7508A(d)'s postponement period. The pre-amendment §7508A(d) applied to "all of the acts referenced by §7508A(a)," which, in turn, included both the taxpayer *and* government acts enumerated in

§7508(a)(1). *Abdo*, 162 T.C. at 165. The amendment limited §7508A(d)'s application to "subparagraphs (A) through (F) of section 7508(a)(1)," which includes the taxpayer acts, like filing returns and paying taxes, but omits most government acts, like assessing and collecting taxes, and the long list of acts specified by the Secretary in Rev. Proc. 2018-58, 2018-50 I.R.B. 990. I.R.C. §7508A(d)(1) (Supp. III 2021). Neither of these "real and substantial" effects require reading §7508A(d) to allow an indefinite postponement period.

### C. Other structural and contextual clues support the time-limited postponement period that is evident from §7508A(d)'s text

This Court need not look beyond §7508A(d)'s text to conclude that it unambiguously allows only a 60-day postponement period here. But if there is any doubt about that conclusion, other structural and contextual clues resolve it. *See, e.g.*, *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (citation modified). Section 7508A's structure as a whole, subsection (d)'s "60-day" heading, Congress's intent to provide "certainty," and the absurd results that flow from the Claims Court's contrary interpretation confirm what is

evident from §7508A(d)'s text: there is a 60-day postponement period from January 20, 2020, and no more.

### 1. Section 7508A created a discretionary *and* a mandatory postponement period, but the Claims Court's interpretation of the latter makes this distinction meaningless

"Statutes must be read as a whole." *Territory of Guam v. United States*, 593 U.S. 310, 316 (2021) (citation modified). Section 7508A, as a whole, provides both a discretionary and a mandatory postponement period. I.R.C. §7508A(a), (d). It also instructs that the mandatory postponement period "shall be disregarded in the same manner as the" discretionary postponement period,[17] which suggests that Congress enacted the former to *supplement*—but not subsume—the latter. I.R.C. §7508A(d)(1) (flush language); *see also* I.R.C. §7508A(d)(5) (mandatory postponement period "shall be in addition to (or concurrent with, as the case may be)" any discretionary postponement period). The mandatory postponement period should thus be interpreted to maintain the discretionary postponement period's independent operation and effect.

[17] Section 7508A(d)'s cross-reference to subsection (a)'s discretionary postponement period, which cannot exceed one year, is yet another clue that Congress never intended the mandatory postponement period to be open-ended or multiple years.

In other words, §7508A must be read to produce a "coherent and consistent" "statutory scheme." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (citation modified).

Reading §7508A(d) to provide a 60-day mandatory postponement period from the only incident date specified in the President's California disaster declaration preserves the independent operation of §7508A(a)'s discretionary postponement period and produces a coherent statutory scheme. By contrast, the Claims Court's over three-and-a-half-year mandatory postponement period under §7508A(d) obliterates any distinction between the two postponement periods and renders §7508A(a) superfluous.

Re-examining §7508A(a) and (d) side-by-side shows why: Subsection (a) applies to "a taxpayer *determined by the Secretary*"; subsection (d) applies to "*any* qualified taxpayer." Subsection (a) allows the Secretary to "specify a period of up to *1 year* that may be disregarded"; subsection (d) prescribes a period that "*shall* be disregarded" "beginning on the earliest incident date specified" in the President's disaster declaration and "ending on the date which is *60 days* after the latest incident date" specified in the same declaration.

Subsection (a) allows the Secretary to specify "for what purposes a period is disregarded," *Abdo*, 162 T.C. at 162; subsection (d) requires that "all of the acts referenced by [subsection (a)]" be disregarded, *id.* at 165. *See id.* at 161 (reproducing chart comparing the two provisions). In short, where subsection (a) grants the Secretary discretion to determine for whom, for how long (up to one year), and for what purpose its postponement period applies, subsection (d) itself defines the "who," the "how long," and the "purpose" of its postponement period.

Because the mandatory postponement period's characteristics are statutorily prescribed, it takes effect upon the President's disaster declaration. Once in effect, the mandatory period applies broadly: to six categories of taxpayers having some connection to the disaster area, I.R.C. §7508A(d)(1)-(2), and to a comprehensive list of taxpayer and government acts, I.R.C. §§7508A(d)(1), (a)(1), 7508(a)(1). This immediacy and breadth reflect the exigency of a disaster in its early stages, and it explains why subsection (d) tightly ties its postponement period to the earliest and latest incident date in the President's declaration. It provides immediate, far-reaching but time-limited tax relief while affected taxpayers are in the most acute stages of a disaster.

By comparison, subsection (a)'s postponement period depends on the Secretary's discretion. That discretion allows him to target taxpayers that are in most need of relief following a disaster, and to target what type of relief is most needed by those taxpayers. Because the Secretary has discretion to target the taxpayers and the type of relief, it makes sense that subsection (a) also gives him the discretion to provide a much longer period of relief—"up to 1 year"—compared to subsection (d)'s "[m]andatory 60[]day[s]."

Thus, §7508A's two postponement periods form a coherent statutory scheme: (i) a comprehensive but short mandatory period for all possibly affected taxpayers in the disaster's immediate aftermath; and (ii) a targeted but longer-term period for taxpayers most affected by a disaster once taxpayer needs become more apparent. *See Abdo*, 162 T.C. at 168 (mandatory postponement period "protects taxpayers … while the Secretary considers whether and how to exercise his discretion under subsection (a)"). Even the Claims Court agreed, acknowledging that "Congress appears to have intended for the statute to provide routine short-term deadline extensions under

section 7508A(d) and, in rare instances under section 7508A(a), further extensions by the Secretary that would last up to a year." (Appx12.)

But contrary to the Claims Court's view, the straightforward reading of the mandatory postponement period set out above (at pp.25-38) honors §7508A's two-tracked structure. Here, the mandatory period started on January 20, 2020, and ended on March 20, 2020; and, as a result of the President's nationwide disaster declarations, applied to taxpayers nationwide and postponed a comprehensive set of tax-related deadlines during that period. Then, reflecting the COVID-19 disaster's unprecedented and ongoing nature, the Secretary exercised his discretion to an unprecedented degree to further postpone specific deadlines for specific taxpayers. In 2020, the IRS issued 13 notices postponing various taxpayer deadlines (and some government deadlines). (*Supra* p.14 & n.9.) Relevant to most taxpayers: any taxpayer with an income tax return or payment due between April 1 and July 15, 2020, had those deadlines postponed to July 15, 2020. IRS Notice 2020-23, 2020-18 I.R.B. 742. Similarly, in 2021, the IRS issued three notices postponing taxpayer deadlines. IRS Notice 2021-10, 2021-7 I.R.B. 888; IRS Notice 2021-12, 2021-6 I.R.B. 828; IRS Notice 2021-21,

2021-15 I.R.B. 986. Again, relevant to most taxpayers, any Form 1040 filers had their deadline to file such forms and pay taxes associated with such forms postponed to May 17, 2021. IRS Notice 2021-21, 2021-15 I.R.B. 986. Both the mandatory and discretionary postponement periods have independent operation and effect.

But under the Claims Court's interpretation, none of the IRS's actions mattered—indeed, the IRS's discretionary postponement authority under §7508A(a) was wholly superfluous. On the Claims Court's reading, §7508A(d)'s mandatory postponement period lasted over three-and-a-half years, covered taxpayers nationwide, and applied to almost every tax-related deadline in the Code, leaving nothing whatsoever for §7508A(a) to do. Interpretations should aim to "give effect to every clause and word of a statute," *Polselli v. IRS*, 598 U.S. 432, 441 (2023) (citation modified), and "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme," *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 159 (2021) (citation modified). The Claims Court's interpretation of §7508A(d) swallows up and makes superfluous §7508A(a), which is yet another reason it is wrong.

### 2. Section 7508A(d)'s heading is more evidence that the mandatory postponement period is 60 days

"Headings supply cues as to what Congress intended." *Rudisill v. McDonough*, 601 U.S. 294, 309 (2024) (citation modified). Subsection (d)'s heading summarizes the provision as a "Mandatory *60-day* extension." I.R.C. §7508A(d) (emphasis added). This, of course, does not displace subsection (d)'s text; if the President's declaration specifies two "incident date[s]," an "earliest" and a "latest," the mandatory period will be longer than 60 days. But Congress's characterization is telling.

For one, it suggests that Congress envisioned the mandatory postponement period to be automatic ("Mandatory") but short ("60-day"). Second, it suggests that Congress at least contemplated a mandatory postponement period lasting *only* 60 days—from one incident date in the President's declaration—as we have advocated here. And more than anything, it shows that Congress did not contemplate that the mandatory postponement period would be *more than three-and-a-half years* or indefinite depending on whether FEMA closed its incident period for the relevant disaster. Section 7508A(d)'s heading makes clear that Congress intended the mandatory postponement period to be time limited, not open ended.

### 3. A 60-day postponement period tracks Congress's concern about "certainty"

Section 7508A(d)'s limited legislative history reinforces the view that the mandatory postponement period is certain and brief not indefinite and protracted. Legislative history cannot "defeat unambiguous statutory text." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 674-75 (2020). But this Court has maintained that legislative history can "inform the[] interpretation of statutes," including when that history "further supports" a particular interpretation. *New York and Presbyterian Hosp. v. United States*, 881 F.3d 877, 887 (Fed. Cir. 2018). The legislative history further supports §7508A(d)'s unambiguous text that provides a 60-day postponement period from January 20, 2020.

In its lone statement about why Congress enacted §7508A(d), the House Ways and Means Committee said that it "believes that the *certainty* and additional time provided by an automatic extension of filing deadlines for taxpayers affected by Federally declared disasters will ease the burden of tax compliance for taxpayers dealing with the hardship of disaster recovery." H.R. Rep. No. 116-379, at 99 (emphasis added). Interpreting §7508A(d)'s postponement period in accordance with its plain text—60 days from the only incident date in the

President's declaration—comports with taxpayer certainty because the period's length is immediately ascertainable. The Claims Court's interpretation of §7508A(d), on the other hand, does not comport with taxpayer certainty. Rather, it leaves tax deadlines in limbo until FEMA closes its incident period.

#### 4. The Claims Court's over three-and-a-half-year postponement period produces absurd results for tax administration

Finally, "interpretations of a statute [that] would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *WestRock Va. Corp. v. United States*, 941 F.3d 1315, 1320 (2019) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)). The Claims Court's interpretation of §7508A(d) creates absurd results: it means that tax administration was effectively brought to a halt for over three-and-a-half years, and it grants FEMA the extraordinary power to bring tax administration to a halt—a power that it has never claimed. And as we have explained, an alternative interpretation of §7508A(d) that follows from its unambiguous text and purpose is available.

Make no mistake, the implications of the Claims Court's decision are staggering. To reiterate: The President declared a major disaster for COVID-19 in every State beginning on January 20, 2020. That is, taxpayers nationwide were "qualified taxpayer[s]" under §7508A(d). Thus, under the Claims Court's reading, §7508A(d) automatically postponed the deadlines for performing the "actions" in §7508A(a) from January 20, 2020, until July 10, 2023, for nearly every U.S. taxpayer. (Appx12.) And the "actions" in §7508A(a), by cross-reference to §7508(a)(1), encompass nearly every tax-related act for taxpayers and the government alike.

For taxpayers:

- "Filing any return of income, estate, gift, employment, or excise tax";
- "Payment of any income, estate, gift, employment, or excise tax or any installment thereof or of any other liability to the United States in respect thereof";
- "Filing a petition with the Tax Court for redetermination of a deficiency, or for review of a decision rendered by the Tax Court";

- "Filing a claim for credit or refund of any tax"; and
- "Bringing suit upon any such claim for credit or refund."

I.R.C. §7508(a)(1)(A)-(C), (E)-(F).

For the government:

- "Allowance of a credit or refund of any tax";
- "Assessment of any tax";
- "Giving or making any notice or demand for the payment of any tax, or with respect to any liability to the United States in respect of any tax";
- "Collection, by the Secretary, by levy or otherwise, of the amount of any liability in respect of any tax"; and
- "Bringing suit by the United States, or any officer on its behalf, in respect of any liability in respect of any tax."

I.R.C. §7508(a)(1)(D), (G)-(J).

And for good measure: "Any other act required or permitted under the internal revenue laws specified by the Secretary." I.R.C. §7508(a)(1)(K). The Secretary has specified over 120 pages worth of such acts. Rev. Proc. 2018-58, 2018-50 I.R.B. 990.

Consequently, under the Claims Court's reading, from January 20, 2020, through July 10, 2023, virtually *no one* was required to file returns, pay taxes, petition the Tax Court to challenge deficiency notices, file refund claims, or sue for such refund claims; nor was the government required to comply with the usual time limits for assessing and collecting taxes. The Claims Court's belief that this interpretation of §7508A(d) would be "unlikely" (Appx15) to have widespread effects was simply mistaken. To the contrary, the Claims Court's three-and-a-half-year postponement period has the potential to affect "tens of millions" of taxpayers and to cost the public fisc tens of billions of dollars—because, for instance, any taxpayer who paid penalties or interest associated with an untimely filing or payment during that period could be entitled to a refund. *E.g.*, Richard Rubin, *Door Opens To Millions for Covid Tax Refund*, Wall St. J., May 1, 2026, at A4.

Of course, the Claims Court's tax-free period did not actually happen. Some deadlines during that time were postponed by the Treasury Secretary for much shorter periods under §7508A(a). But taxpayers otherwise filed returns and paid taxes, and the government assessed and collected taxes and issued refunds, as normal. *See, e.g.*,

*IRS Data Book, 2020*, Pub. 55-B, 1-3 (June 2021), https://www.irs.gov/pub/irs-prior/p55b--2021.pdf [https://perma.cc/8S3C-AK83] (reporting "close to $3.5 trillion in gross taxes" collected and "more than 240.2 million" returns filed in 2020). Indeed, not even Kwong acted in accordance with the Claims Court's interpretation, as he timely filed his administrative refund claims in 2020, *during* the COVID-19 disaster.

This behavior suggests what §7508A(d)'s text makes plain: Congress did not hide a three-and-a-half-year pause on tax administration in an ancillary provision about disaster declarations. It does not "hide elephants in mouseholes." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) (citation omitted).

In addition to the wholesale suspension of tax administration brought on by the Claims Court's interpretation, the Claims Court also empowers FEMA to set the bounds of this suspension because the court relied on FEMA's incident period. This is not only contrary to §7508A(d)'s text—which centers on the incident date in the President's declaration—it also has the anomalous consequence of granting FEMA extraordinary power that it has never claimed. It is especially

anomalous because, in §7508A(a), Congress granted only the Treasury Secretary authority to postpone tax-related deadlines; and even then, he can do so only "up to 1 year."

But under the Claims Court's §7508A reading, FEMA—an agency §7508A never mentions—can postpone tax-related deadlines indefinitely. The Supreme Court has viewed with skepticism "extraordinary" assertions "of regulatory authority" based on "modest words, vague terms, or subtle devices" in statutes. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (citation modified). Although FEMA has never asserted that its incident period has the extraordinary power to indefinitely pause tax administration, the same skepticism should apply to a court's statutory interpretation that has the result of granting such extraordinary power.

The Claims Court was quick to swat down these concerns, reasoning that the "executive branch is supposed to work together." (Appx15.) But this reasoning misunderstands the incident period's role. It has nothing to do with tax deadlines and everything to do with administering disaster assistance, as we have explained. It would be passing strange if the IRS asked FEMA to cut short its provision of

disaster assistance—not because the aid was unnecessary—but because of concerns about how tax administration would be impacted. But that is what the Claims Court's interpretation requires and is why its interpretation is wrong.

In the end, neither of these extraordinary consequences are required by §7508A(d). Rather, the straightforward application of §7508A(d)'s unambiguous text avoids these consequences and produces a result in line with its purpose. It provides comprehensive, certain, and time-limited tax relief in the immediate aftermath of an unprecedented disaster. But it does not provide an indefinite pause of tax administration, only to be resolved upon FEMA's notice closing the incident period for its administration of disaster assistance under the Stafford Act.

### D. Alternatively, the "latest incident date so specified" was the date of the President's disaster declaration

For all the reasons explained, the best and most natural reading of §7508A(d) compels the conclusion that the postponement period lasted 60 days from the only "incident date specified in the declaration": January 20, 2020. The President's description of the disaster as "continuing"—consistent with a long-established Presidential practice

that Congress was aware of when it enacted §7508A(d)—has meaning for the administration of federal disaster assistance under the Stafford Act. But it does not have meaning for §7508A(d) because postponement under that statute requires a specified date.

If this Court disagrees, however, and concludes that the President's use of the words "and continuing" must be treated as if they specified an incident date under §7508A(d), the Claims Court's reliance on FEMA's incident period was still wrong. Rather, in that circumstance, the declaration's use of "and continuing" would best be read as referring to the date of the President's declaration: March 22, 2020. 85 Fed. Reg. at 20703. Thus, under this alternative approach, the "latest incident date so specified" under §7508A(d) was March 22, 2020, and the postponement period ended 60 days later.

In the context of describing a disaster-causing incident as "beginning on January 20, 2020, and continuing," the word "continuing" is naturally read to mean that the incident is "continuing *through today*," i.e., the date of the declaration. That is, the incident was still "in existence" as of the declaration date. *See, e.g.*, New Oxford Am. Dictionary 376 (3d ed. 2010) (defining "continue"). And because the

declaration identifies no later date, the only "latest incident date so specified" to which the phrase "and continuing" could refer is the declaration date: March 22, 2020.

Under this alternative view, the postponement period that began on January 20, 2020, would have ended on May 21, 2020, 60 days after the declaration date.[18] Although the better reading of the statute is that the declaration's use of "and continuing" has no effect on the postponement period (*supra* pp.28-30), treating those words as referring to the date of the declaration is the most natural alternative if the Court concludes that they must be treated as an "incident date."

In no case can "and continuing" be treated, like the Claims Court did, as granting license to read §7508A(d)'s postponement period as indefinite until FEMA administratively closes the disaster's FEMA-determined "incident period." Unlike the government's proposed readings, the Claims Court's reading has no basis in §7508A(d)'s text for the many reasons we have explained (*supra* pp.38-54).

---

[18] If the Court were to adopt this view, then a remand would be necessary for the Claims Court to determine (1) the dates on which Kwong's administrative claims were disallowed (*supra* p.16 n.10); and, if those dates make it necessary, (2) whether §7508A(d) provides for postponement or tolling.

### E. At all events, the mandatory postponement period cannot exceed one year

Finally, even if the mandatory postponement period for a "continuing" disaster could end more than 60 days after the latest incident date specified in the President's disaster declaration, the period would still be capped at "1 year" by §7508A(d)'s cross-reference to §7508A(a). In this alternative universe, the mandatory postponement period could have ended no later than January 20, 2021.[19]

Section 7508A(d)'s requirement that the mandatory postponement period be "disregarded in the same manner as a period specified in subsection (a)," limits the period's length to—at most—"1 year," as subsection (a) prescribes. *Accord* Treas. Reg. §301.7508A-1(g)(3)(ii)(A) ("In no event will the mandatory 60-day postponement period be calculated to exceed one year."). The Supreme Court has agreed that "in the same manner" language used elsewhere in the Code means the "same 'methodology and procedures'" as the referred-to provisions. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 545-46 (2012) (construing "assessed and collected in the same manner as tax"). The

[19] If the Court were to adopt this view, a remand would be necessary for the same reasons outlined in n.18.

one-year cap is part of §7508A(a)'s "methodology and procedures." (*Contra* Appx12.) It thus applies to §7508A(d)'s mandatory postponement period.

The Tax Court's *Abdo* decision is not to the contrary. There, the court concluded that §7508A(d)'s "in the same manner" language refers to the "acts" but not the Secretary's discretion in §7508A(a). *Abdo*, 162 T.C. at 165. The court based this distinction on §7508A(d)'s "mandatory nature," and declined to "express a view on the outer limits" of the mandatory postponement period because the taxpayer in *Abdo* agreed that the COVID-19 disaster declarations specified only one incident date, which was both the earliest and latest incident date under §7508A(d). *Abdo*, 162 T.C. at 157 n.7, 162-65, 169 n.13.

Unlike the mandatory language on which *Abdo* relied to conclude that subsection (d) does not incorporate subsection (a)'s discretion, no statutory language refutes subsection (d)'s incorporation of subsection (a)'s one-year cap. To the contrary, subsection (d)'s plain language shows that the mandatory postponement period is time-limited, not unlimited, and expressly requires that the period be

disregarded "in the same manner" as a discretionary period under subsection (a), which is subject to the one-year ceiling.

## CONCLUSION

The Claims Court's judgment was erroneous and should be reversed because §7508A(d) did not and could not postpone any tax deadline for more than three-and-a-half years. Section 7508A(d) speaks with specificity, fixing the mandatory postponement period to "specifi[c]" "incident date[s]" in the President's disaster "declaration." And January 20, 2020, is the only incident date specified in the President's COVID-19 disaster declarations, including the California disaster declaration. Thus, for all the reasons we have explained, the best reading of §7508A(d) is that its mandatory postponement period began on January 20, 2020, and ended 60 days later. Kwong's 2023 refund suit was therefore untimely for his 2007, 2010, and 2011 claims.

The judgment of the Claims Court should be reversed and remanded with instructions to dismiss Kwong's claims for those years.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
JOSHUA WU
*Deputy Assistant Attorney General*

/s/ *Samuel P. Jones*

FRANCESCA UGOLINI (202) 514-3361
CLINT A. CARPENTER (202) 514-4346
SAMUEL P. JONES (202) 616-9085
*Attorneys, Tax Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Post Office Box 502, Washington, D.C. 20044*

SEPTEMBER 16, 2026

# STATUTORY ADDENDUM

## Internal Revenue Code (26 U.S.C.)

### §7508A (Supp. II 2020). Authority to postpone certain deadlines by reason of Presidentially declared disaster or terroristic or military actions

**(a) In general**

In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster (as defined by section 165(i)(5)(A)) or a terroristic or military action (as defined in section 692(c)(2)), the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any tax liability of such taxpayer—

(1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefor (determined without regard to extension under any other provision of this subtitle for periods after the date (determined by the Secretary) of such disaster or action),

(2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and

(3) the amount of any credit or refund.

**(b) Special rules regarding pensions, etc.**

In the case of a pension or other employee benefit plan, or any sponsor, administrator, participant, beneficiary, or other person with respect to such plan, affected by a disaster or action described in subsection (a), the Secretary may specify a period of up to 1 year which may be disregarded in determining the date by which any action is required or permitted to be completed under this title. No plan shall be treated as failing to be operated in accordance with the terms of the plan solely as the result of disregarding any period by reason of the preceding sentence.

**(c) Special rules for overpayments**

The rules of section 7508(b) shall apply for purposes of this section.

**(d) Mandatory 60-day extension**

**(1) In general**

In the case of any qualified taxpayer, the period—

(A) beginning on the earliest incident date specified in the declaration to which the disaster area referred to in paragraph (2) relates, and

(B) ending on the date which is 60 days after the latest incident date so specified,

shall be disregarded in the same manner as a period specified under subsection (a).

**(2) Qualified taxpayer**

For purposes of this subsection, the term "qualified taxpayer" means—

(A) any individual whose principal residence (for purposes of section 1033(h)(4)) is located in a disaster area,

(B) any taxpayer if the taxpayer's principal place of business (other than the business of performing services as an employee) is located in a disaster area,

(C) any individual who is a relief worker affiliated with a recognized government or philanthropic organization and who is assisting in a disaster area,

(D) any taxpayer whose records necessary to meet a deadline for an act described in section 7508(a)(1) are maintained in a disaster area,

(E) any individual visiting a disaster area who was killed or injured as a result of the disaster, and

(F) solely with respect to a joint return, any spouse of an individual described in any preceding subparagraph of this paragraph.

**(3) Disaster area**

For purposes of this subsection, the term "disaster area" has the meaning given such term under subparagraph (B) of section 165(i)(5) with respect to a Federally declared disaster (as defined in subparagraph (A) of such section).

**(4) Application to rules regarding pensions**

In the case of any person described in subsection (b), a rule similar to the rule of paragraph (1) shall apply for purposes of subsection (b) with respect to-

(A) making contributions to a qualified retirement plan (within the meaning of section 4974(c)) under section 219(f)(3), 404(a)(6), 404(h)(1)(B), or 404(m)(2),

(B) making distributions under section 408(d)(4),

(C) recharacterizing contributions under section 408A(d)(6), and

(D) making a rollover under section 402(c), 403(a)(4), 403(b)(8), or 408(d)(3).

**(5) Coordination with periods specified by the Secretary**

Any period described in paragraph (1) with respect to any person (including by reason of the application of paragraph (4)) shall be in addition to (or concurrent with, as the case may be) any period specified under subsection (a) or (b) with respect to such person.

# RECORD ADDENDUM

## Table of Contents

Judgment (Doc. 45)........................................................................Appx1

Order (Doc. 44)...............................................................................Appx2

Opinion and Order (Doc. 38).........................................................Appx4

# In the United States Court of Federal Claims

**No. 23-267 T**
**Filed: March 17, 2026**

************************************
**TERRY W. KWONG,** *
**Plaintiff,** *
*
**v.** *
*
**THE UNITED STATES,** *
**Defendant.** *
************************************

**JUDGMENT**

Pursuant to the court's Order, filed March 16, 2026,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff shall recover of and from the United States an overpayment of income tax, for plaintiff's income-tax year ended December 31, 2007, in the amount of $84,000.00, with statutory interest on such overpayment computed pursuant to section 6611(b)(2) of the Internal Revenue Code with a "date of overpayment" of September 19, 2018. No costs or attorney's fees are awarded.

Lisa L. Reyes
Clerk of Court

By: s/ Ashley Reams
Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Effective December 1, 2023, the appeals fee is $605.00.

# In the United States Court of Federal Claims

No. 23-267
Filed March 16, 2026

TERRY W. KWONG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

On November 25, 2025, the court issued its opinion granting in part and denying in part the government's motion for summary judgment and asked that the parties file a joint status report proposing next steps for the case. ECF No. 38. The parties filed joint status reports as they worked to reach an agreement for entry of a stipulated judgment consistent with the court's opinion. ECF Nos. 39, 41, 42. On March 13, 2026, the parties submitted a joint status report and request for entry of judgment. ECF No. 43.

The clerk of the court shall enter judgment in accordance with the court's November 25, 2025, opinion (ECF No. 38) and the parties' joint request for entry of judgment (ECF No. 43). Pursuant to rule 58 of the Rules of the Court of Federal Claims, plaintiff shall recover from the United States the following amount:

- For plaintiff's income-tax year ended December 31, 2007, an overpayment of income tax in the amount of $84,000.00, with statutory interest on such overpayment computed pursuant to section 6611(b)(2) of the Internal Revenue Code with a "date of overpayment" of September 19, 2018.
- For plaintiff's income-tax years ended December 31, 2010, December 31, 2011, December 31, 2015, and December 31, 2016, plaintiff shall take nothing
- Neither party is awarded costs or attorneys' fees.

The clerk of the court is **directed** to enter judgment. This is a final, appealable order.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge

# In the United States Court of Federal Claims

| | |
|---|---|
| TERRY W. KWONG,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 23-267<br>Filed November 25, 2025 |

Anthony V. Diosdi, Diosdi & Liu, LLP, San Francisco, CA, for plaintiff.
Tanner Stromsnes, Tax Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting in part and denying in part the government's motion for summary judgment**

Terry Kwong filed suit in this court seeking a refund of penalties he paid for tax years 2007, 2010, 2011, 2015, and 2016. The government moves for summary judgment on all of Mr. Kwong's claims. The government argues that Mr. Kwong's claims for 2007, 2010, and 2011 are untimely. For 2015 and 2016, the government argues that the IRS correctly assessed penalties against Mr. Kwong for underpaying taxes throughout the year and that his challenge for 2016 is otherwise untimely. Mr. Kwong responds that his suit for 2007, 2010, and 2011 is timely because he is entitled to a statutory extension of the deadline under covid emergency relief legislation. Mr. Kwong also responds that the IRS should not have used his 2016 overpayment to cover outstanding penalties from 2007 and that he is therefore entitled to a refund of that overpayment.

Mr. Kwong's challenge for 2007, 2010, and 2011 is timely. The applicable emergency relief statute provides a postponement of deadlines that fall within the timing of the disaster, and that period did not expire until after Mr. Kwong filed suit in this court.

Mr. Kwong's challenges for 2015 and 2016, however, either are untimely or they otherwise fail to state a claim on which the court can grant relief. The IRS acted within its authority when it applied Mr. Kwong's overpayment for 2016 to cover his 2007 tax liabilities, and his request for a refund of that payment was untimely. Mr. Kwong mostly does not dispute that the IRS correctly assessed penalties for underpaying his 2015 and 2016 taxes, and where he does, his complaint fails to state a claim.

Thus, the court will grant in part and deny in part the government's motion for summary judgment.

## I. Background

Mr. Kwong was a co-owner of a business that owns and manages real estate. ECF No. 1 at 5 [¶30]; ECF No. 29-1 at 8:5-10:19. In 2005, Mr. Kwong bought his co-owners' shares and became the sole owner of the business. *Id.* at 10:13-19. As part of that transaction, Mr. Kwong refinanced the business's property. ECF No. 1 at 5 [¶31]; ECF No. 29-1 at 14:1-25. On the advice of his attorney and accountant, Mr. Kwong claimed a loss of $2,315,017 from the transaction on his 2005 tax return and carried that loss forward, including to the 2007, 2010, and 2011 tax years. ECF No. 1 at 5-6 [¶¶32-34]; ECF No. 29-1 at 18:14-16. The IRS audited Mr. Kwong's 2005 tax return and disallowed the loss in 2012, resulting in additional tax liabilities for the tax years to which he had applied the loss. ECF No. 1 at 6 [¶¶36-38]. At the same time, the IRS assessed delinquency penalties for those tax years. *Id.*; ECF No. 1-1 at 2 (2007 tax period; tax, interest, and penalty imposed in April 2012); *id.* at 7 (2010 tax period); *id.* at 10 (2011 tax period).

In 2015, Mr. Kwong had a tax liability of $426,756, but he withheld only $6,719 over the course of the tax year. ECF No. 29-1 at 82. The IRS assessed penalties for his failure to withhold enough money. *Id.* Later, Mr. Kwong negotiated an abatement of those penalties. *Id.* at 84. After the abatement, Mr. Kwong owed a total penalty of $4,563.22 for tax year 2015. *Id.* at 82-86.

In 2016, Mr. Kwong had tax liabilities of $88,164 but withheld only $6,684. ECF No. 29-1 at 89. Before filing his tax return for 2016, Mr. Kwong made an estimated payment of $400,000 to the IRS. *Id*. Mr. Kwong's 2016 tax return then requested that the amount that was an overpayment be applied forward to his 2017 taxes. *Id*. at 126. The IRS assessed $1,929.98 in penalties for tax year 2016 for Mr. Kwong's under-withholding. *Id.* at 89. Thus, an overpayment of $316,590.02 remained. Rather than applying that amount to Mr. Kwong's 2017 taxes, the IRS transferred it to cover Mr. Kwong's outstanding balance from tax year 2007. *Id*.

In 2020, Mr. Kwong filed requests for abatement, seeking refunds for the penalties he had paid for each of the 2007, 2010, 2011, 2015, and 2016 tax years. ECF No. 29-1 at 91-123. Later that year, in September and October 2020, the IRS issued notices of disallowance for Mr. Kwong's 2007, 2010, and 2011 claims. *Id.* at 64, 72, 78. As of when Mr. Kwong filed suit, the IRS had not acted on Mr. Kwong's 2015 or 2016 claims. *Id*. at 82-90. Mr. Kwong filed his complaint in 2023 in this court seeking refunds of the penalties for all five tax years. ECF No. 1 at 15-16. The government now moves for summary judgment, arguing that Mr. Kwong's 2007, 2010, and 2011 claims are untimely, and that the IRS appropriately assessed penalties for 2015 and 2016. ECF No. 29.

On August 6, 2025, the court held a hearing on the government's motion for summary judgment. ECF No. 34. After the hearing, the court ordered the parties to provide supplemental briefing on some of the issues raised at the hearing (ECF Nos. 32, 35), and the parties filed supplemental briefs (ECF Nos. 36, 37).

## II. Discussion

The court may grant summary judgment when the movant establishes that the record does not contain a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Court of Federal Claims, Rule 56(a). When reviewing a motion for

summary judgment, "the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Genuine disputes over material facts preclude summary judgment. *Id.* at 248. A dispute is genuine when the evidence could lead a factfinder to reasonably resolve that issue "in favor of either party." *Id.* at 250. A fact is material if it might "affect the outcome of the suit under the governing law." *Id.* at 248. When a fact is ambiguous, the court draws all justifiable inferences and resolves any significant doubt in the non-movant's favor. *Id.* at 255.

"The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact." *8x8, Inc. v. United States*, 854 F.3d 1376, 1380 (Fed. Cir. 2017). "[T]he burden on the moving party may be discharged by showing … that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (cleaned up).

### A. Mr. Kwong's claims for 2007, 2010, and 2011 are timely

The tax code prescribes time limits for when a taxpayer may file a suit for a refund of taxes or penalties he has paid: "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim … nor after the expiration of 2 years from the date of mailing … of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532.

#### 1. The parties' arguments presented a moving target

The IRS rejected Mr. Kwong's requests for abatement for 2007, 2010, and 2011 in September and October 2020, and Mr. Kwong filed this suit in February 2023, about two years and three months later. The briefing in this case was a journey. The government started by arguing that Mr. Kwong's 2007, 2010, and 2011 claims are jurisdictionally barred under 26 U.S.C. § 6532.

ECF No. 29 at 4-6. Mr. Kwong responded that the section 6532 statute of limitations is not jurisdictional, and even if it were, his claims were equitably or statutorily tolled under 26 U.S.C. § 7508A as part of the emergency relief enacted during the covid-19 pandemic. ECF No. 30 at 3-10. According to Mr. Kwong, section 7508A tolled the deadlines for him to file at the IRS from January 20, 2020, through July 10, 2023. *Id.* at 9-10. The government replied that Congress amended section 7508A in November 2021 to reduce the extension to only 60 days from the beginning of an emergency, and thus Mr. Kwong could not benefit from the extension. ECF No. 31 at 3-4.

After the court provided the parties with specific questions for the oral argument about postponement periods versus tolling and about retroactive application of the November 2021 statute, the government provided more detail at the oral argument. But it took the court's independently finding and citing the effective date of the 2021 statute for the government to concede that the November 2021 statute does not apply at all in this case, and only the 2019 version of section 7508A applies here. ECF No. 36 at 4.

The government then shifted gears in its supplemental brief and argued that, even under the older, 2019, version of section 7508A, the covid-19 disaster declaration could not postpone Mr. Kwong's filing deadline until February 2023. The government argued both that Mr. Kwong's reading of the statute would render it disjointed and that the initial declaration did not specify an end date but only declared that the disaster was "continuing," while the 2019 version of the statute requires a date "so specified." *Id.* at 7-9.

**2. Section 6532 can be and was extended by statute**

The government spent most of its briefs on issues that turn out not to matter to its case. It spent a lot of space arguing that section 6532 is jurisdictional and therefore cannot be equitably tolled. ECF No. 29 at 4-5 (citing, among other cases, *RHI Holdings, Inc. v. United States*, 142 F.3d

1459, 1461–63 (Fed. Cir. 1998)). But even if section 6532 is jurisdictional, that forecloses only *equitable* tolling; the deadline may still be tolled or extended by statute.[1] *See Abdo v. Commissioner of Internal Revenue*, 162 T.C. 148, 168 (2024) (reasoning that section 7508A gave taxpayers an automatic postponement of section 6532's deadlines). In fact, section 6532 itself allows for extensions: "The 2-year period prescribed in [section 6532(a)(1)] shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary." 26 U.S.C. § 6532(a)(2).

Congress amended section 7508A in 2019 and amended it again in November 2021. The government spent its reply brief arguing that the 2021 version of section 7508A should apply (ECF No. 31 at 3-4), prompting the court's questions about retroactivity (ECF Nos. 32, 35). But, as the government ultimately conceded (ECF No. 36 at 6), the November 2021 amendment applied only to disasters declared after the enactment of the amendment. 167 Cong. Rec. S5247-01, S5496 (2021) ("The amendment made by this section shall apply to federally declared disasters declared after the date of enactment of this Act."). Thus, the November 2021 amendment could not apply

---

[1] The Federal Circuit has held that the two-year limitation in section 6532 is jurisdictional and does not allow for equitable tolling. *RHI Holdings*, 142 F.3d at 1462. More recent Supreme Court cases have held that, absent a clear statement by Congress that a time bar for filing is jurisdictional, the "courts should treat the restriction as nonjurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (addressing 28 U.S.C. § 2401(b)). That is true in tax cases as well. *Boechler, P.C. v. Commissioner of Internal Revenue*, 596 U.S. 199, 204 (2022) (holding that the timing requirement in 26 U.S.C. § 6330(c) was not jurisdictional and therefore was subject to equitable tolling); *see also Culp v. Commissioner of Internal Revenue*, 75 F.4th 196, 201-02 (3d Cir. 2023) (explaining, based on *Boechler*, that the time limit in 26 U.S.C. § 6213(a) was non-jurisdictional because "there is no clear tie between the deadline and the jurisdictional grant"), *rehearing denied* (Nov. 28, 2023), *cert. denied*, 144 S. Ct. 2685 (2024); *Walby v. United States*, 957 F.3d 1295, 1299 (Fed. Cir. 2020) (stating in a tax refund case that "it may be time to reexamine [Federal Circuit] case law in light of the Supreme Court's clarification that so-called 'statutory standing' defects—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction"). This court need not decide whether equitable tolling is available under section 6532 because, although Mr. Kwong characterizes the tolling in different ways, he in fact seeks statutory, not equitable, tolling. *See* ECF No. 30 at 9-10.

to the covid-19 disaster, which was declared in early 2020. That means the parties' briefing about retroactivity (ECF No. 36 at 3-4; ECF No. 37 at 8-9) is irrelevant to the case.

Section 7508A allows the Secretary of the Treasury to postpone a taxpayer's deadline to file his taxes, usually during a period of a natural disaster. Although section 7508A changed during the period relevant to this lawsuit, at all relevant times it stated that the Secretary may "specify a period of up to 1 year that may be disregarded" during a taxpayer's two-year window to bring suit for a tax credit or refund. 26 U.S.C. § 7508A(a) (2019 and 2021); *see id.* § 7508A(a)(1). The statute also includes, at all times relevant to this lawsuit, an automatic, or "mandatory," extension for any qualified taxpayer in a declared disaster area. 26 U.S.C. § 7508A(d) (2019 and 2021). Under the 2019 version, the period of automatic extension ran from "the earliest incident date specified in the declaration" to "the date which is 60 days after the latest incident date so specified." 26 U.S.C. § 7508A(d) (2019). In November 2021, Congress amended the automatic extension of section 7508A, changing the end of the period from "the date which is 60 days after the *latest incident date* so specified," to "the date which is 60 days after the later of such *earliest incident date* … or the *date such declaration was issued*." *Compare* 26 U.S.C. § 7508A(d) (2019) *with* 26 U.S.C. § 7508A(d) (2021) (emphasis added). Thus, the automatic extension, on its face, went from an unlimited period, as long as the disaster was ongoing, to a maximum of 60 days.[2]

### 3. Section 7508A, as applied to the covid-19 disaster, extended the deadline until July 2023

Mr. Kwong argues that his deadline was postponed under the 2019 version of section 7508A(d) until 60 days after the covid emergency declaration in California—he resides in California—was over. Mr. Kwong argues that that date is July 10, 2023, at the earliest. ECF No. 30

[2] In July 2025, Congress again amended the mandatory extension deadline, extending it from 60 days to 120 days. 26 U.S.C. § 7508A(d) (2025). The change in mandatory extension does not impact this case.

at 9; ECF No. 37 at 4. According to Mr. Kwong, because his time to file suit began in September or October 2020 (depending on the tax year) and was extended until at least July 2023, and he filed in February 2023, his suit is timely. The government responds that Mr. Kwong's reading of section 7508A is disjointed and also that, because the emergency declaration did not initially include a specific end date, the statute does not apply to extend the postponement period as long as Mr. Kwong needs. ECF No. 36 at 7.

Mr. Kwong's view is correct, under the court's reading of the 2019 version of section 7508A. The 2019 version of the statute allows the period of automatic extension to run from "the earliest incident date" of the disaster declaration to "60 days after the latest incident date." 26 U.S.C. § 7508A(d) (2019). The plain meaning of that statute is that the automatic extension runs from the beginning of the disaster declaration, through the end of the declared disaster period, and until 60 days after the end of the declared disaster period. The government does not dispute the plain meaning of the 2019 version of section 7508A. *See* ECF No. 36 at 6-9.

On March 13, 2020, the president declared nationwide emergency (Letter to Federal Agencies on an Emergency Determination, 2020 Daily Comp. Pres. Doc. 159, available at govinfo.gov (Mar. 13, 2020)), and on March 22 he declared a major disaster area in California "beginning on January 20, 2020, and continuing," due to pandemic conditions (California; Major Disaster and Related Determinations, 85 Fed. Reg. 20703-02 (Apr. 14, 2020)). The Federal Emergency Management Agency was appointed to coordinate the response. *Id.* The pandemic emergency declaration was later amended to end on May 11, 2023: "[T]he incident period for all COVID-19 major disaster declarations … will close effective May 11, 2023." Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023).

A disaster declaration that lasted more than three years was unprecedented. Congress appears to have intended for the statute to provide routine short-term deadline extensions under section 7508A(d) and, in rare instances under section 7508A(a), further extensions by the Secretary that would last up to a year. 26 U.S.C. § 7508A(d), (a) (2019). Disaster declarations often apply to short-term weather events affecting localized communities; the covid-19 pandemic was an unprecedented and long-lasting national event. Although Congress may not have anticipated a disaster declaration lasting more than three years, the statute's express text nevertheless applies. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quotation marks omitted)).

The provision under subsection (a) for the Secretary to optionally issue an extension up to a year does not undermine the plain meaning of the text of subsection (d) that allows for a potentially longer automatic extension. The government argues (ECF No. 36 at 8) that because subsection (d) states that the mandatory period "shall be disregarded in the same manner as a period specified under subsection (a)," the extension under subsection (d) can be no longer than the extension available under subsection (a). But the "manner" in which the period is disregarded, discussed in subsection (a), is more evidently not the length of time but the types of actions that can be delayed, such as a taxpayer's determining amounts of interest and amounts of credit or refund. 26 U.S.C. §7508A(a)(2), (3) (2019). Nothing in subsection (d) mentions or implies a one-year limit. Under the express text of the statute, the automatic extension lasted until after the end of the disaster declaration, or, in the case of the covid-19 disaster, until July 10, 2023 (60 days after its end date of May 11, 2023).

And nothing in subsection (a) renders the court's reading of subsection (d) nonsensical. Congress said, and easily could have meant, essentially, that for short-term emergencies, the Secretary was authorized to extend deadlines to up to one year, but for long-term emergencies, there was no further extension available.

**4. The declaration's use of the word "continuing" has meaning**

The government further argues that the extension did not continue into 2023 because the date in the initial emergency declaration is both the earliest and latest incident date "specified" for purposes of section 7508A. ECF No. 36 at 7. The government states that, because the initial pandemic emergency declaration was "beginning on January 20, 2020, and continuing," only the January date was "specified" according to the statute. *Id.*

That argument is unpersuasive. If the emergency declaration was intended to include only January 20, 2020, the declaration would not have also said, "and continuing." *See* 85 Fed. Reg. 20703-02. The government's choice to maintain the disaster declaration beyond January 20, 2020, has meaning.

The government relies on *Abdo* for support that the earliest incident and latest incident date are both January 20, 2020. ECF No. 36 at 6-7; *see Abdo*, 162 T.C. at 150, 169. But the Tax Court in *Abdo* did not address a postponement extending more than 60 days after January 20, 2020. There, a longer postponement was not at issue because the court held that the petitioners had filed a timely claim within the first 60 days of the covid-19 emergency declaration, that is, within 60 days of January 20, 2020. *See Abdo*, 162 T.C. at 156-57, 169. The *Abdo* court therefore did not need to address the disaster declaration's effect going past the first 60 days. *Id.* at 169 n.13 ("We need not, and therefore do not, express a view on what the outer limits of the extension period may be where a declaration omits an ending date or is extended."); *see also id*. at 157 n.8.

The 2021 amendment to section 7508A(d) altered the mandatory extension, such that it would end 60 days after the earliest incident date or the date the declaration was issued, whichever date is later. *See* 26 U.S.C. § 7508A(d)(1)(B) (2021). The change in statutory text ensures that a mandatory 60-day extension is tacked on after a single date rather than after the last day of a multi-day (or multi-year) disaster declaration. Congress thus changed the statute to no longer have an indefinite automatic extension when a disaster lasts a long time. That Congress had to amend the statute implies that Congress changed the statute's meaning; otherwise, Congress could have left the statute's text as it was. *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) ("[W]e ordinarily presume that when Congress [amends a statute], it intends its amendment to have real and substantial effect." (quotation marks omitted)).

**5. The IRS's interpretation does not control the analysis**

The government argues that, in a regulation, the IRS interpreted the 2019 version of section 7508A not to extend the automatic extension indefinitely. ECF No. 36 at 8. It is true that the IRS, in a regulation effective June 11, 2021, stated, "In no event will the mandatory 60-day postponement period [under subsection (d)] be calculated to exceed one year." 26 C.F.R. § 301.7508A-1(g)(3)(ii). And the Secretary of the Treasury regularly issues disaster relief orders under section 7508A that extend deadlines for taxpayers. During the covid-19 pandemic, the Secretary issued notices postponing deadlines for tax filers from April 15 to July 15, 2020 (IRS Notice 2020-17 at 980 (Apr. 20, 2020)), and from April 15 to May 17, 2021 (IRS Notice 2021-21 at 986 (Apr. 12, 2021)). Each notice explained that the deadline was extended for taxpayers to file their federal tax returns only for the preceding year, 2019 and 2020 respectively. According to the government, if Mr. Kwong's interpretation is correct, none of those postponements would have been necessary.

But the IRS's reading of the statute is not dispositive. This court must "exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority … courts

… may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024); *see also 3M Co. v. Commissioner of Internal Revenue*, No. 23-3772, slip op. at 4 (8th Cir. Oct. 1, 2025). The regulations promulgated by the IRS appear to misread the statute by limiting the mandatory extension time described in section 7508A(d) by the general one-year provision mentioned in section 7508A(a). *See* 26 C.F.R. § 301.7508A-1(g)(3)(ii). As discussed above, the court reads the two provisions as independent. The statute is not ambiguous, at least for purposes of the timing question in this case.

The government fears that this court's reading of section 7508A, according to its plain meaning, will cause "uncertainty [in] tax administration" for all taxpayers from January 2020 to July 2023. ECF No. 36 at 9. This decision is being issued in 2025, more than two years after Mr. Kwong filed his suit in 2023. The years that have passed since the end of the covid-19 disaster declaration make it unlikely that many taxpayers would still be able to bring a timely claim based on the 2019 statute. Further, the extension may have given a taxpayer like Mr. Kwong additional time to file his claim, but the extension was not "indefinite[]" (ECF No. 36 at 9).

The government also fears that this court's reading of the statute gives the head of the Federal Emergency Management Administration the power to suspend the timelines of tax administration without input from the Secretary of the Treasury or the Commissioner. ECF No. 36 at 9. But that is true whether the automatic postponement period is only 60 days or is longer. And the executive branch is supposed to work together; concerns that one agency will make policy for another should be worked out within the executive branch.

* * *

In sum, under the 2019 statute, the automatic, or mandatory, extension period began on January 20, 2020, and ended on July 10, 2023, 60 days after the emergency declaration's latest

incident date. Because the mandatory period for covid-19 under section 7508A lasted from early 2020 to July 10, 2023, it does not matter whether the statute provides for tolling or a postponement period (*see* ECF No. 36 at 1-2). Either way, Mr. Kwong had until at least July 10, 2023, to file suit. He filed suit before that, and his suit for tax years 2007, 2010, and 2011 was therefore timely.[3]

### B. Mr. Kwong's challenge to the transfer of his 2016 overpayment to 2007 is untimely

In 2017, when Mr. Kwong filed his tax return for tax year 2016, he had a balance of $316,590.02 in overpayments. The IRS applied it to satisfy his outstanding debts from the 2007 tax year, even though Mr. Kwong requested that the IRS apply it forward to the 2017 tax year. *Supra* Part I. As already discussed, Mr. Kwong timely challenged the 2007 penalties themselves. But the parties also address whether Mr. Kwong has timely challenged the 2017 transfer.

Mr. Kwong can no longer challenge the IRS's applying the balance of Mr. Kwong's overpayment to satisfy his outstanding federal tax liabilities, separately from his challenge to tax year 2007 itself. Under 26 U.S.C. § 6402(a), the IRS may first satisfy any outstanding IRS liabilities before applying an overpayment as a credit for future taxes. "In the case of any overpayment, the Secretary … may credit the amount of such overpayment … against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." 26 U.S.C. § 6402(a). "The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose

---

[3] At oral argument, Mr. Kwong's attorney indicated that he was likely abandoning his claims for tax years 2010 and 2011. ECF No. 34 at 54:17-21 ("[W]e're not concerned so much about [tax years 2010 and 2011]. What we're really concerned about is 2007 and the payment from 2016 to 2007."). So the challenge at issue essentially covers only tax year 2007. Also at oral argument, Mr. Kwong's attorney stated that he was disputing only the penalties, not the underlying tax liability. *Id.* at 56:2-7 ("It's only the penalties [that we are disputing]. We're not disputing the underlying tax liability."). Notably, because Mr. Kwong has challenged only the penalties for tax year 2007, the government argues that his total claim for 2007 is at most $84,000. ECF No. 36 at 11. The court will not address that issue here, as Mr. Kwong has not yet had a chance to respond to the government's calculation of the total penalty.

of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." 26 U.S.C. § 7422(d). Thus, "[u]nder section 7422(d), when the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit." *Greene-Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008). Here, because the IRS applied Mr. Kwong's 2017 payment (initially made for tax year 2016) to tax year 2007, his refund claim is for tax year 2007, not tax year 2016.

Once the payment is applied to an earlier tax year, the date of the IRS's transfer serves as the date that the money was paid. *See Schaeffler v. United States*, 889 F.3d 238, 249 (5th Cir. 2018); *Donahue v. United States*, 33 Fed. Cl. 600, 605 (1995). In this case, the IRS made the transfer in April 2017 (ECF No. 29-1 at 61) or, at the latest, November 2017 (*see* ECF No. 36 at 10 n.6). Thus, Mr. Kwong's clock to request a refund of that approximately $317,000 began in April 2017 or November 2017 at the latest.

Under 26 U.S.C. § 6511(a), a taxpayer must request a refund, at the latest, "2 years from the time the tax was paid." Section 6511 has an exception that tolls the deadline to file a return if the taxpayer "is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," or if the taxpayer has a legal guardian. 26 U.S.C. § 6511(h)(2)(A).

If Mr. Kwong wanted to seek a refund of the IRS's transfer of his overpayment for tax year 2016 to tax year 2007, he needed to file a request for a refund of a payment to his 2007 taxes, and he needed to do that by April or November 2019, or he needed to argue that the exception applies. He did neither. He filed requests for abatements for 2007 and 2016 in 2020, more than two years

after the payment was transferred to his 2007 taxes. Mr. Kwong has not argued that the exception applies during that period, making him ineligible for a tolling of the two years he had to file his return. Thus, even though Mr. Kwong's request for abatement of his 2007 tax return was timely, he cannot separately recover the 2016 overpayment because he requested abatement of the 2016 overpayment more than two years after he sent the overpayment. The government is entitled to summary judgment on the transfer of Mr. Kwong's overpayment from tax year 2016 to 2007. Mr. Kwong can and has challenged the penalties for 2007 within the 2007 tax year, but he cannot also, separately, challenge those penalties under the 2016 tax year.

### C. There is no genuine issue of material fact that Mr. Kwong owed an underpayment penalty for tax year 2016

The IRS assessed penalties against Mr. Kwong under 26 U.S.C. § 6654 for tax year 2016 for underpaying his taxes over the course of that year. *See* 26 U.S.C. § 6654(a) ("Except as otherwise provided in this section, in the case of any underpayment of estimated tax by an individual, there shall be added to the tax … an amount" that includes the amount of underpayment plus an additional penalty.). For tax year 2016, in addition to arguing that the IRS should not have applied his overpayment to his outstanding IRS obligations, addressed above, Mr. Kwong argues that he acted reasonably in relying on the 2005 advice of his tax preparers and would not have incurred a delinquency penalty absent their bad advice. ECF No. 30 at 10-12. To the extent that Mr. Kwong is arguing about the penalties applied to the 2007, 2010, and 2011 tax years, he is not too late to raise that, as discussed in Part II.A above. To the extent that Mr. Kwong is arguing about penalties incurred in tax year 2016, the IRS appropriately applied a penalty of approximately $1,930 for underpaying his taxes over the course of the year, and that penalty is not subject to a reasonable cause exception.

As an initial matter, Mr. Kwong is ambiguous about the type of penalty the IRS assessed on his 2016 tax return. He argues that it was a "delinquency penalty," presumably under section 6651 for failure to file a tax return. ECF No. 30 at 10, 12; *see* ECF No. 29-1 at 119 (requesting a refund for penalties under sections "6551, 6654"). But the IRS knew he had filed a return and assessed an underpayment penalty under section 6654 for that year, for underpaying estimated taxes throughout the year. ECF No. 29-1 at 89 (noting an "estimated tax penalty" of $1,929.98); ECF No. 1-1 at 16 (explaining that the $1,929.98 charge was a "[p]enalty for not pre-paying tax").

Mr. Kwong does not present any viable excuse for his 2016 penalty under section 6654. Notably, under section 6651, penalties may be waived if the taxpayer shows that his failure to file or pay "is due to reasonable cause and not due to willful neglect." 26 U.S.C § 6651(a). A taxpayer may demonstrate reasonable cause if he relies on the advice of an accountant on questions of tax law, including the existence of a tax liability. *United States v. Boyle*, 469 U.S. 241, 251 (1985). Unlike section 6651, underpayment penalties under section 6654 cannot be excused for reasonable cause. Instead, section 6654 states that a penalty may be waived if the taxpayer owes less than $1,000 for the year (subsection (e)(1)), the taxpayer had no tax liability in the preceding tax year (subsection (e)(2)), an unusual circumstance such as a disaster occurred that would make imposing the penalty against "equity and good conscience" (subsection (e)(3)(A)), or the taxpayer retired or became disabled in the tax year (subsection (e)(3)(B)). Mr. Kwong makes no argument that any of those excuses apply.

For 2016, Mr. Kwong withheld $6,684 over the course of the year and had tax liabilities of $88,164. ECF No. 29-1 at 89. Under section 6654, an underpayment occurs when a taxpayer pays less than 90 percent of the tax he owes over the course of the tax year. 26 U.S.C. § 6654(d)(B)(i). Mr. Kwong paid less than 10 percent of his taxes over the course of 2016, and he does not dispute

that he underpaid his 2016 taxes over the course of the year. Thus, there is no genuine issue of material fact that the IRS appropriately assessed a penalty of $1,930 for underpayment of Mr. Kwong's 2016 taxes.

**D. Mr. Kwong abandoned his claim for a refund for tax year 2015**

In his complaint, Mr. Kwong requests a "refund of the delinquency penalties overpaid by [Mr. Kwong] for the 2015 tax year in the amount of $10,727." ECF No. 1 at 15-16 [¶¶G-H]. In his response to the government's motion for summary judgment, Mr. Kwong does not address the government's arguments on tax year 2015. *See* ECF No. 30. At oral argument, Mr. Kwong's attorney stated that he is abandoning his request for tax year 2015. ECF No. 34 at 54:22-25. Because Mr. Kwong has abandoned the claim involving tax year 2015, the government is entitled to summary judgment for tax year 2015.

## III. Conclusion

For the reasons stated above, this court **grants in part and denies in part** the government's motion for summary judgment. Mr. Kwong has timely challenged the penalties assessed for tax years 2007, 2010, and 2011. The parties shall file a joint status report by December 29, 2025, noting that the parties have engaged in a settlement discussion within the last week in person, by videoconference, or by phone and proposing next steps, including proposed dates for a trial, pretrial conference, and deadlines for pretrial filings.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1843

**Short Case Caption:** Kwong v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,959 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.

- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 09/16/2026

Signature: /s/ Samuel P. Jones

Name: Samuel P. Jones